**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

United States District Court
Southern ...

JAN 2 8 2003

Michael N. Milby
**Clerk of Court**

| | | |
|---|---|---|
| **WELLS FARGO BANK TEXAS, N.A.** | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | CIVIL ACTION NO. **B-03-028** |
| | § | |
| **CELINA CORPORATION,** | § | |
| **ENRIQUETA H. BARRERA** | § | |
| **and the F/V LUCILA ANN, her** | § | |
| **engines, nets, tackle, apparel, and** | § | **IN ADMIRALTY** |
| **furniture, etc.,** *in rem,* | § | |
| **Defendants** | § | |

## PLAINTIFF'S COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW **WELLS FARGO BANK TEXAS, N.A.**, Plaintiff herein, complaining of **CELINA CORPORATION**, *in personam*, the owner of the named vessel, **F/V LUCILA ANN**, her engines, nets, tackle, apparel, and furniture, etc. *in rem*, and **ENRIQUETA H. BARRERA**, individually as guarantor, herein collectively referred to as Defendants, and for cause of action would respectfully show unto the Court the following:

I.

### PARTIES

1.    Plaintiff is a national banking association, with an office and its principal place of business at 1800 W. Highway 100, Port Isabel, Texas 78578.

2. Defendant **CELINA CORPORATION**, a Texas corporation, having its principal place of business in Cameron County, Texas, may be served with process by serving its registered agent for process DAVID KRUMMEL at 1229 B Hwy 100 (P O Box 211), Port Isabel, Texas 78578.

3. Defendant **ENRIQUETA H. BARRERA** is an individual, resident of Cameron County, Texas, who may be served with process at her residence at 1213 Hwy 100, Laguna Heights, Texas 78578.

4. Defendant **F/V LUCILA ANN**, formerly known as F/V CHAMPION CLIPPER, Official Number 537958, is a fishing vessel, believed to be wholly owned by Defendant **CELINA CORPORATION**. On information and belief the **F/V LUCILA ANN** is now or during the pendency of this action will be, within this District and which may be found for service of process and arrested at the docks at Port Isabel, Texas.

II.

## JURISDICTION AND VENUE

5. This is a case involving admiralty and maritime jurisdiction within the meaning of Rule 9(h) and Supplemental Rule C of the Federal Rules of Civil Procedure. This Court has subject matter jurisdiction under 46 USC §31342 and 28 USC §1333. The Defendant Vessel is, or will be, during the pendency of the process within this district and within the jurisdiction of this court.

III.

## FACTS OF THE CASE

6. On or about the May 25, 1988, **CELINA CORPORATION** executed and delivered to **WELLS FARGO BANK TEXAS, N.A.**, or its predecessor in interest, a promissory

note bearing such date and year in the principal amount of $125,772.83 and thereby promised to pay to the order of **WELLS FARGO BANK TEXAS, N.A.**, or its predecessor in interest, the principal sum of $125,772.83, plus accrued interest of 12 ¾ percent per annum as stated in the Note and any and all extensions and/or modifications to the Note.

True and correct copies of the Note, Extensions and/or Modifications are attached hereto as **Exhibit "A"**.

On or about April 19, 1991, **CELINA CORPORATION** executed and delivered to **WELLS FARGO BANK TEXAS, N.A.** assignee of MERCHANTS MARINE BANK (formerly FIRSTBANK, hereinafter sometimes referred to as "**WELLS FARGO**"), a Renewal and Extension of Promissory Note bearing such date and year in the principal amount of $60,000.00, and on January 21, 1993, January 23, 1997, March 7, 1997, April 7, 2000 and May 10, 2000 executed and delivered Renewal, Enlargement and Modifications of Note bearing such dates and years, the last renewal in the principal amount of $68,973.07, and thereby promised to pay to the order of **WELLS FARGO**, the principal sum of $68,973.07, plus accrued interest of 1.5 percentage points over the Index, adjusted if necessary for the maximum rate limitation described below, resulting in an initial rate of 10.50 percent per annum.

True and correct copies of the Note, Extensions and/or Renewals are attached hereto as **Exhibit "B"**.

7.    The Note further provides that the holder is authorized to declare all or any part of the indebtedness immediately due and payable upon the happening of any of several

events including the "failure to pay any part of the indebtedness when due" or "nonperformance" by the signor.

8.    At the time of the execution of the note **CELINA CORPORATION** was the sole owner of the **F/V LUCILA ANN**, Official Number 537958.  To secure the payment of said note, **CELINA CORPORATION** duly executed and delivered to **WELLS FARGO** a preferred mortgage upon said vessel, dated May 25, 1988.  A true and correct copy of the mortgage is attached hereto as **Exhibit "C"**.

On April 19, 1991, FEDERAL DEPOSIT INSURANCE CORPORATION in its corporate capacity as Liquidator for MERCHANTS MARINE BANK delivered to **WELLS FARGO** an Assignment of Mortgage.  A true and correct copy of the assignment is attached hereto as **Exhibit "D"**.

9.    In pertinent part, the mortgage provides that in the event of default in the payment of the principal of the note or any installment thereof the holder may declare the principal of said note and all accrued interest to be due and payable forthwith, after which it shall bear interest at the maximum amount of nonusurious interest that may be allowed by law.

10.    On or about April 7, 2000, Defendant **ENRIQUETA H. BARRERA** executed her personal guarantee of the Note, which provided in pertinent part:

"…For good and valuable consideration, **ENRIQUETA H. BARRERA** ("Guarantor") absolutely and unconditionally guarantees and promises to pay to **WELLS FARGO BANK TEXAS, N.A.** ("Lender") or its order, in legal tender of the United States of America the indebtedness (as that term is defined below) of **CELINA CORPORATION** ("Borrower") to Lender on the terms and conditions set forth in this Guaranty.  Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing…."

A copy of **WELLS FARGO** guaranty executed by **ENRIQUETA H. BARRERA** is

attached hereto as **Exhibit "E"** and incorporated by reference as if fully set forth at length.

11.    On the March 7 1997 and May 10, 2000, **CELINA CORPORATION** amended the preferred mortgage, said amendments updating the Mortgagee (transferee). A copy of the amendments are attached hereto as **Exhibit "F"** and incorporated herein as if fully set forth at length.

12.    The Defendants have defaulted in the payment of the Note.

13.    Plaintiff is the legal owner and holder of such note and the entity entitled to enforce it. Plaintiff has made presentment and formal written demand upon Defendants to pay the Note. Defendants failed and refused to pay same and the Note, having matured and become due and payable by virtue of such default, has been placed in the hands of the undersigned attorneys for collection, agreeing to pay them attorneys' fees as provided in the Note.

14.    Defendants are indebted to Plaintiff in the principal amount of $47,133.07 plus accrued interest in the amount of $3,196.91 and such interest as may accrue according to the Note until paid. Defendants are further indebted to Plaintiff for a line of credit in the principal amount of $26,000.00 plus accrued interest in the amount of $1,393.54 and such interest as may accrue until paid. A copy of the credit agreement is attached hereto as **Exhibit "G"** and incorporated herein as if fully set forth at length.

15.    Plaintiff has and claims a maritime lien against the Defendant vessel in the amount of the accelerated principal and interest due to date plus default interest as stated in the Note.

IV.

## ATTORNEYS' FEES

Plaintiff would further show the court that by reason of the Defendants' default and failure to cure their default upon demand, Plaintiff has been required to retain the services of the undersigned attorneys and is entitled to recoup reasonable attorneys' fees in connection with the collection of said promissory note and foreclosure of its preferred mortgage in an amount of at least $7,772.35.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays:

A.  that process in due form of law according to the rules and practice of this court in causes of maritime and admiralty jurisdiction may issue against the vessel the **F/V LUCILA ANN**, her engines, tackle, etc., citing all persons claiming any interest to appear and answer on oath all and singular the matters stated above and that said Vessel, her engine, tackle, apparel, etc. and all other necessaries thereunto belonging and appertaining, be condemned and sold to pay the demands and claims aforesaid with interest;

B.  that process be issued against the Defendant **CELINA CORPORATION**, and Defendant Guarantor **ENRIQUETA H. BARRERA** named herein;

C.  that Plaintiff's claim be established as a maritime lien in the amount set forth above against the named Defendant Vessel;

D.  that Plaintiff recover the full amount of the indebtedness, jointly and severally, from the *in personam* defendant, **CELINA CORPORATION** and guarantor Defendant **ENRIQUETA H. BARRERA**;

E.  that Plaintiff recover prejudgment and postjudgment interest as provided by

the terms of the Note and law and costs of suit;

F.  that Plaintiff recover reasonable attorneys' fees; and

G.  for such other and further relief to which Plaintiff may be justly entitled.

Respectfully Submitted,

RENTFRO, FAULK & BLAKEMORE, LLP
185 E. Ruben M. Torres Sr. Blvd.
Brownsville, TX 78520-9136
(956) 541-9600-phone
(956) 541-9695-facsimile

T. MARK BLAKEMORE
SBN: 02431800
Federal Admn. No. 1915

ATTORNEYS FOR PLAINTIFF

## **VERIFICATION**

THE STATE OF TEXAS                    §
                                      §
COUNTY OF TRAVIS                      §

    BEFORE ME, the undersigned authority, on this day personally appeared, KEVIN D. MULLET, who, being by me first duly sworn, deposed and said:

    "My name is KEVIN D. MULLETT. I am the Vice President of WELLS FARGO BANK TEXAS, N.A., Plaintiff in the above and foregoing entitled and numbered action. In my capacity, I am familiar with the operations and billing records of WELLS FARGO BANK TEXAS, N.A.  I have read the foregoing Plaintiff's Complaint and the contents thereof are true and correct and within my own personal knowledge."

    FURTHER AFFIANT SAITH NOT.



_____
KEVIN D. MULLETT

    SWORN TO AND SUBSCRIBED BEFORE ME by the said, KEVIN D. MULLETT, Vice President of. WELLS FARGO BANK TEXAS, N.A. which witness my hand and seal of office this __22__ day of January, 2003.

NORA E. MARTINEZ
Notary Public
STATE OF TEXAS
My Comm. Exp. 06-14-2006

_____
Notary Public, State of Texas

---

PREFERRED SHIP'S MORTGAGE NOTE

$125,772.83                                    Port Isabel, Texas
                                               May 25, 1988


        FOR VALUE RECEIVED, I, WE, or either of us promise to pay to
the order of MERCHANTS MARINE BANK, at its banking house in the
City of Port Isabel, Cameron County, Texas, the sum of ONE
HUNDRED TWENTY FIVE THOUSAND SEVEN HUNDRED SEVENTY TWO AND 83/100
DOLLARS ($125,772.83), in legal and lawful money of the United
States of America, with interest thereon from date hereof, at the
rate of twelve and three-fourths percent (12 3/4%) per annum from
the date of funding until maturity on July 20, 1988, payable as
follows, to-wit:

    The entire principal balance hereof, plus accured
    interest at the rate above specified, shall be due and
    payable on the 20th day of July, 1988.


        All past due principal and interest on this Note shall bear
interest from the maturity thereof until paid at the maximum
legal rate allowed in the State of Texas or by Federal Law.

        In the event of default in the payment of any installments,
either principal or interest, when due, the holder hereof may, at
its option, declare all of the remainder of said debt due and
payable; and any failure to exercise said option shall not
constitute a waiver of the right to exercise same at any other
time.

        If suit is brought on this Note, or if it is placed in the
hands of an attorney for collection, or collected through the
Probate or Bankruptcy Courts, the undersigned agrees to pay the
expenses of collection, including attorney's fees of ten percent
(10%) of the principal and interest then due on this Note.

        Each maker, surety and endorser hereon waives grace,
presentment and demand for payment, notice of nonpayment, protest
and notice of protest and consents that the time of payment may
be extended from time to time without notice to any of them.

        This Note is secured by a Preferred Ship's Mortgage of even
date herewith, covering the whole of the Oil Screw CHAMPION
CLIPPER G., Official No. 537958, executed by Celina Corporation
in favor of Merchants Marine Bank, of Port Isabel, Texas.


                          CELINA CORPORATION

                      By _M B Barrera_____
                          Wm. B. Barrera, President

**RENEWAL:** This note is given in ﹍﹍ ﹍newal and extension but not in ext ﹍﹍ ﹍ent of that one certain First Preferred Ship's Mortgage Note dated **MAY 25, 1988**﹍﹍﹍, given by the undersigned, payable to the order of **MERCHANTS MARINE BANK TRANSFERRED TO FIRSTBANK**﹍﹍﹍﹍, secured by a First Preferred Ship's Mortgage in the amount of ﹍﹍**$125,772.83**﹍covering the hull of the vessel known as **LUCILLE ANN f/k/a CHAMPION CLIPPER**﹍﹍﹍ Official No. **537958**﹍﹍﹍﹍﹍﹍, recorded in the office of the United States Coast Guard Documentation Office, Port of **HOUSTON**﹍﹍﹍﹍﹍﹍, Texas, on ﹍﹍﹍﹍﹍﹍﹍﹍﹍ in Book No. ﹍﹍﹍﹍ Instrument No. ﹍﹍﹍﹍﹍﹍.

This note is given in part in renewal and extension but not in extinguishment of that one certain First Preferred Ship's Mortgage Note dated ﹍﹍﹍﹍﹍﹍, given by the undersigned, payable to the order of ﹍﹍﹍﹍﹍ ﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍, secured by a First Preferred Ship's Mortgage in the amount of ﹍﹍﹍﹍﹍covering the hull of the vessel known as ﹍﹍﹍﹍﹍ Official No. ﹍﹍﹍﹍﹍﹍, recorded in the office of the United States Coast Guard Documentation Office, Port of ﹍﹍﹍﹍﹍﹍, Texas, on ﹍﹍﹍﹍﹍﹍﹍ in Book No. ﹍﹍﹍﹍ Instrument No. ﹍﹍﹍﹍﹍.

This note is given in part in renewal and extension but not in extinguishment of that one certain First Preferred Ship's Mortgage Note dated ﹍﹍﹍﹍﹍﹍, given by the undersigned, payable to the order of ﹍﹍﹍﹍﹍ ﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍, secured by a First Preferred Ship's Mortgage in the amount of ﹍﹍﹍﹍﹍covering the hull of the vessel known as ﹍﹍﹍﹍﹍ Official No. ﹍﹍﹍﹍﹍﹍, recorded in the office of the United States Coast Guard Documentation Office, Port of ﹍﹍﹍﹍﹍﹍, Texas, on ﹍﹍﹍﹍﹍﹍﹍ in Book No. ﹍﹍﹍﹍ Instrument No. ﹍﹍﹍﹍﹍.

This note is given in part in renewal and extension but not in extinguishment of that one certain First Preferred Ship's Mortgage Note dated ﹍﹍﹍﹍﹍﹍, given by the undersigned, payable to the order of ﹍﹍﹍﹍﹍ ﹍﹍﹍﹍﹍﹍﹍﹍﹍﹍, secured by a First Preferred Ship's Mortgage in the amount of ﹍﹍﹍﹍﹍covering the hull of the vessel known as ﹍﹍﹍﹍﹍ Official No. ﹍﹍﹍﹍﹍﹍, recorded in the office of the United States Coast Guard Documentation Office, Port of ﹍﹍﹍﹍﹍﹍, Texas, on ﹍﹍﹍﹍﹍﹍﹍ in Book No. ﹍﹍﹍﹍ Instrument No. ﹍﹍﹍﹍﹍.

Dated: **JANUARY 24, 1994**﹍﹍﹍﹍﹍

BORROWER: **CELINA CORPORATION**

**Wm. B. BARRERA**
**PRESIDENT**
BORROWER:

BORROWER:

BORROWER:

RENEWAL AND EXTENSION

FIRST PREFERRED MORTGAGE NOTE

$131,185.97                    Port Isabel, Texas                    July 20, 1988

     FOR VALUE RECEIVED, I, we or any of us, the undersigned, promise to pay to the order of Merchants Marine Bank at its banking house in Port Isabel, Texas, the sum of One Hundred Thirty One Thousand One Hundred Eighty Five and. 97/100 ($131,185.97) Dollars, together with interest thereon at the rate of twelve and three-quarters (12.75%) per cent, per annum from date until maturity, payable as follows: Principal and interest on this note is due and payable in 6 monthly installments of $3,000.00 interest included each beginning August 1, 1988 and 1 installment at balloon of $121,697.64 on February 1, 1989.

     All past due installments shall bear interest from maturity until paid at the maximum legal rate of interest per annum.

     This note is given in renewal and extension, but not in extinguishment, of that one certain Preferred Mortgage Note dated November 20, 1987, in the orginal principal sum of $125,772.83, given by the undersigned, payable to the order of Merchants Marine Bank, Port Isabel, Texas, said note being secured by a First Preferred Mortgage upon and covering that certain Vessels known as CHAMPION CLIPPER G.Official No. 537958: said Preferred Mortgage having been filed for record in the office of the Eighth Coast Guard District,..Port of`Houston, Texas on        ,..in Book        , Inst. No.        , to which Preferred Mortgage and the record reference is here now made for all purposes: and it is understood and agreed that this extension and renewal is not to be considered as a novation of account nor as a new contract, but that all of the rights, powers, title and liens created by virtue of said marine promissory note and said preferred mortgage are hereby continued and carried forward, and the same are hereby expressly acknowledged by the undersigned.

     In the event of default in the payment of any installment hereon when due the holder hereof may, at its option, declare all of the remainder of said debt due and payable; and any failure to exercise said option shall not constitute a waiver of the right to exercise the same at any other time.

     In the event of default is made in the prompt payment of any installment hereon when due, and this note is placed in the hands of an attorney for collection, or suit is brought on same, or this note is collected through probate, bankruptcy or other judicial proceedings, the undersigned agrees and promises to pay fifteen (15%) per cent additional on the amount of principal and interest then owing, as well as attor ney's fees.

     Each maker, surety and endorser hereon WAIVES GRACE, PRESENTMENT and demand for payment, notice of nonpayment, protest, and notice of protest and consents that the time of payment may be extended without notice.

     Full authority is hereby given the legal holder hereof to apply hereon any funds in the possession of such holder belonging to any obligor or endorser hereon to the payment of this note or to any other obligation owing to said bank; or to sell any collateral security, assigned or attached, at public or private sale without notice, at any time after maturity or at any time before maturity in the event the holder feels unsafe or insecure. The holder may become the purchaser at any such sale.

CELINA CORPORATION

William B. Barrera, President

William B. Barrera, Individually

O/S CHAMPION CLIPPER G.

EXHIBIT A
Page 3 of 6

Pay to the order of FirstBank, of Port Isabel, Texas, without Recourse or Warranty,
either Express or Implied, Federal Deposit Insurance Corporation, in its
Corporate Capacity as Liquidator of Merchants Marine Bank.

BY Games W. McAnally
ATTORNEY IN FACT FOR FDIC

RENEWAL AND EXTENSION

FIRST PREFERRED MORTGAGE NOTE

$120,532.35                    Port Isabel, Texas                    January 3, 1989

FOR VALUE RECEIVED, I, we or any of us, the undersigned, promise to pay to the order of Merchants Marine Bank at its banking house in Port Isabel, Texas, the sum of One Hundred Twenty Thousand Five Hundred Thirty Two and 35/100 ($120,532.35) Dollars, together with interest thereon at the rate of twelve and three-quarters (12.75%) per cent, per annum from date until maturity, payable as follows: Princip al and interest on this note is due and payable in 5 monthly installments of inter- est only each beginning February 3, 1989 and 1 installment at balloon of $123,635.62 on July 3, 1989.

All past due installments shall bear interest from maturity until paid at the maximum legal rate of interest per annum.

This note is given in renewal and extension, but not in extinguishment, of that one certain Preferred Mortgage Note dated November 20, 1987,, in the orginal principal sum of $125,772.83, given by the undersigned, payable to the order of Merchants Marine Bank, Port Isabel, Texas, said note being secured by a First Preferred Mortgage upon and covering that certain Vessels known as CHAMPION CLIPPER G. Official No. 537958: said Preferred Mortgage having been filed for record in the office of the Eighth Coast Guard District, Port of Houston, Texas On July 12, 1988, in Book PM-172, Inst. No. 199, to which Preferred Mortgage and the record reference is here now made for all purposes; and it is understood and agreed that this extension and renewal is not to be considered as a novation of account nor as a new contract, but that all of the rights, powers, title and liens created by virtue of said marine promissory note and said preferred mortgage are hereby continued and carried forward, and the same are hereby expressly acknowledged by the undersigned.

In the event of default in the payment of any installment hereon when due the holder hereof may, at its option, declare all of the remainder of said debt due and payable; and any failure to exercise said option shall not constitute a waiver of the right to exercise the same at any other time.

In the event of default is made in the prompt payment of any installment hereon when due, and this note is placed in the hands of an attorney for coll- ection, or suit is brought on same, or this note is collected through probate, bankruptcy or other judicial proceedings, the undersigned agrees and promises to pay fifteen (15%) per cent additional on the amount of principal and interest then owing, as well as attorney's fees.

Each maker, surety and endorser hereon WAIVES GRACE, PRESENTMENT and demand for payment, notice of nonpayment, protest, and notice of protest and consents that the time of payment may be extended without notice.

Full authority is hereby given the legal holder hereof to apply hereon any funds in the possession of such holder belonging to any obligor or endorser hereon to the payment of this note or to any other obligation owing to said bank; or to sell any collateral security, assigned or attached, at public or private sale without notice, at any time after maturity or at any time before maturity in the event the holder feels unsafe or insecure.  The holder may become the purchaser at any such sale.

CELINA CORPORATION

_William B. Barrera, President_

_William B. Barrera, Individually_

O/S CHAMPION CLIPPER G.

EXHIBIT A
Page 5 of 6

Pay to the order of FirstBank, of Port Isabel, Texas, without Recourse or Warranty,
either Express or Implied, Federal Deposit Insurance Corporation, in its
Corporate Capacity as Liquidator of Merchants Marine Bank.

BY James W. McAnnelly
ATTORNEY IN FACT FOR FDIC

RENEWAL AND EXTENSION OF PROMISSORY NOTE

$60,000.00                                    Port Isabel, Texas
                                              April 19, 1991


        FOR VALUE RECEIVED, I, WE, or either of us promise to pay to
the order of FIRSTBANK in the city of Port Isabel, Cameron County,
Texas, the sum of SIXTY THOUSAND AND NO/100 DOLLARS ($60,000.00),
in legal and lawful money of the United States of America, with
interest thereon from date of funding hereof until maturity on
January 19, 1993, at the rate of thirteen percent (13%) per annum.
This Note is payable as set forth in the payment schedule
following, to-wit:

        Interest, only, computed at the rate above specified on
        the unpaid principal balance hereof, shall be due and
        payable on the 19th day of May, June, and July, 1991;

        Principal payments in the amount of TWO THOUSAND
        AND NO/100 DOLLARS ($2,000.00), each, plus accrued
        interest computed at the rate specified above,
        shall be due and payable beginning on the 19th day
        of August, 1991 and continuing regularly thereafter
        on the 19th day of September, October, November,
        December, 1991, and January 19, 1992;

        Interest, only, shall be due and payable beginning
        on February 19, 1992 and continuing regularly on
        the 19th day of each calendar month until and
        including July 19, 1992; thereafter,

        Principal payments in the amount of TWO THOUSAND
        AND NO/100 DOLLARS ($2,000.00), each, plus accrued
        interest, shall be due and payable in monthly
        installments beginning on August 19, 1992 and
        continuing regularly on the 19th day of each
        calendar month until January 19, 1993, on which
        last mentioned date the entire unpaid balance of
        principal and interest then owing shall be
        immediately due and payable.

        All past due principal and interest on this Note shall
bear interest from the maturity thereof until paid at the
maximum legal rate allowed in the State of Texas or by Federal
law.

        In the event of default in the payment of any installments,
either principal or interest, when due, or in the actual
performance of any of the "events of default" specified in said
Mortgage, the holder hereof may, at its option, declare all of the
remainder of said debt due and payable, and any failure to exercise

EXHIBIT B
Page 1 of 12

said option shall not constitute a waiver of the right to exercise same at any other time.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the Probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including reasonable attorney's fees.

Each maker, surety and endorser hereon waives grace, presentment and demand for payment, notice of nonpayment, protest and notice of protest, and consents that the time of payment may be extended from time to time without any notice to any of them.

This Note is given in renewal and extension, but not in extinguishment of that one certain Promissory Note dated May 25, 1988, in the original principal sum of $125,772.83, given by the undersigned, payable to the order of Merchants Marine Bank, of Port Isabel, Texas (which banking institution is now in receivership), said note being secured by a First Preferred Ship's Mortgage upon and covering the whole of the Oil Screw LUCILA ANN (ex CHAMPION CLIPPER), Official No. 537958, said Mortgage having been filed of record in the office of the United States Coast Guard, Vessel Documentation, Port of Houston, Texas, on the 12th day of July, 1988 at 2:30 P.M. in Book PM-172, as Instrument No. I-199, to which Preferred Mortgage and the record reference is here now made for all purposes; and it is understood and agreed that this extension and renewal is not to be considered as a novation of account nor as a new contract, but that all of the rights, powers, title and liens created by virtue of said marine promissory note and said preferred mortgage are hereby continued and carried forward, and the same are hereby expressly acknowledged by the undersigned.

The aforedescribed $125,772.83 note and the lien securing same is contemporaneously this date being assigned by the FEDERAL DEPOSIT INSURANCE CORPORATION, in its corporate capacity as Liquidator for MERCHANTS MARINE BANK, to FIRSTBANK, of Port Isabel, Texas.

CELINA CORPORATION

BY: _Wm B Barrera_
Wm. B. Barrera, President

LOAN #271764502

RENEWAL AND EXTENSION OF
FIRST PREFERRED MORTGAGE AND NOTE

$36,000.00          PORT ISABEL, TEXAS          JANUARY 21, 1993

FOR VALUE RECEIVED, I, WE, or either of us promise to pay to the order of FirstBank, at its banking house in Port Isabel, Cameron County, Texas the sum of THIRTY-SIX THOUSAND DOLLARS AND 00/100ths ($36,000.00) in legal and lawful money of the United States of America, together with interest thereon from date hereof until maturity, at the rate of TEN AND ONE-HALF (10.50%) PERCENT.

THIS NOTE IS PAYABLE IN SIX (6) MONTHLY INSTALLMENTS OF INTEREST ONLY, BEGINNING FEBRUARY 21, 1993, AND CONTINUING REGULARLY UNTIL JULY 21, 1993; THEREAFTER,

FIVE (5) MONTHLY INSTALLMENTS OF $2,000.00 PLUS ACCRUED INTEREST, BEGINNING AUGUST 21, 1993, AND CONTINUING REGULARLY UNTIL JANUARY 21, 1994, WHEN THE ENTIRE AMOUNT OF PRINCIPAL PLUS ACCRUED INTEREST SHALL BE DUE AND PAYABLE.

All past due principal and interest on this note shall bear interest from the maturity thereof until paid at the maximum legal rate allowed in the State of Texas or by Federal Law.

In the event of default in the payment of any installments, either principal or interest, when due, the holder hereof may, at its option, declare all of the remainder of said debt due and payable; and any failure to exercise said option shall not constitute a waiver of the right to exercise the same at any other time.

All parties to this Note, including sureties, endorsers and guarantors, hereby severally waive presentment for payment, notice of non-payment, protest, notice of protest and dilligence in bringing suit against any party hereto, and all endorsers and guarantors hereby consent that time of payment may be extended after maturity from time to time, without notice hereof.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including attorney's fees of Fifteen Percent (15%) of the principal and interest then due on this Note.

This note is given in part in renewal and extension but not in extinguishment of that one certain First Preferred Ship's Mortgage Note dated MAY 25, 1988, in the original principal sum of $125,772.83, given by the undersigned, payable to the order of MERCHANTS MARTINE BANK ASSIGNED TO FIRSTBANK, secured by a First Preferred Ship's Mortgage in the amount of $125,772.83 covering the hull of the vessel known as "CHAMPION CLIPPER" NOW KNOWN AS "LUCILLA ANN", Official No.537958, recorded in the office of the United States Coast Guard Documentation Office, Port of HOUSTON, TEXAS, on JULY 12, 1988, in Book NO. PM-172 Instrument No. 1-199.

CELINA CORPORATION

BY: _William B. Barrera_____

WILLIAM B. BARRERA, PRESIDENT

## RENEWAL AND MODIFICATION NOTE

**DATE:** January 23, 1997    **ORIGINAL NOTE DATE:** May 25, 1988

**MAKER:** Celina Corporation

**MAKER'S MAILING ADDRESS:** P.O. Box 711, Port Isabel, Cameron County, Texas 78578

**PAYEE:** First Valley Bank

**PLACE FOR PAYMENT:** 203 N. Arroyo Blvd., Los Fresnos, Cameron County, Texas 78566

**PRINCIPAL AMOUNT:** $500.00  **ORIGINAL NOTE AMOUNT:** $125,772.83

**ANNUAL INTEREST ON UNPAID PRINCIPAL FROM DATE:** 11.85%

**ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS:** The maximum legal rate allowed by State and Federal law.

**TERMS OF PAYMENT:**

The principal is payable on January 23, 1998 and the interest is payable at maturity.

**PREFERRED MORTGAGE:**

> **Date:** May 25, 1988
>
> **Owner:** Celina Corporation
>
> **Mortgagee:** Merchants Marine Bank, assinged to FirstBank (n/k/a First Valley Bank) by the FDIC as Receiver for Merchants Marine Bank.
>
> **Vessel:** Lucilla Ann (ex Champion Clipper)  **Official No.:** 537958
>
> **Recording information:** recorded on July 12, 1988, Book No. PM-172, Instrument No. I-199

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date.

If Maker defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, and the default continues after Payee gives Maker notice of the

1

EXHIBIT B
Page 4 of 12

default and the time within which it must be cured, as may be required by law or by written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest, to the extent permitted by law.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including attorney's fees of Fifteen Percent (15%) of the principal and interest then due on this Note.

Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

This note is given in renewal and extension, but not in extinguishment of the note dated May 25, 1988 described herein.

Each Maker is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

If any installment becomes overdue for more than ten (10) days, at bank's option, five percent (5%) of the overdue installment amount will be charged in order to defray the expense of handling the delinquent payment.

**THIS NOTE AND THE INSTRUMENTS BEING EXECUTED ALONG WITH IT REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Celina Corporation

By: *Enriqueta Barrera*

File No.: 972166
Loan No.: 271764505

*27 724/506*

## RENEWAL, ENLARGEMENT AND MODIFICATION NOTE

**DATE:** March 7, 1997        **ORIGINAL NOTE DATE:** May 25, 1988

**MAKER:** Celina Corporation

**MAKER'S MAILING ADDRESS:** P.O. Box 711, Port Isabel, Cameron County, Texas 78578

**PAYEE:** First Valley Bank

**PLACE FOR PAYMENT:** 203 N. Arroyo Blvd., Los Fresnos, Cameron County, Texas 78566

**PRINCIPAL AMOUNT:** $65,500.00        **ORIGINAL NOTE AMOUNT:** $125,722.83

**ANNUAL INTEREST ON UNPAID PRINCIPAL FROM DATE:** The interest rate shall be 2.0 percent over the prime lending rate as published in the Money Rates Section, under the heading "prime rate", of the Southwest edition of the Wall Street Journal as it changes from day to day.

**ANNUAL INTEREST RATE ON MATURED, UNPAID AMOUNTS:** The maximum legal rate allowed by State and Federal law.

**TERMS OF PAYMENT:**

Payments of interest shall be due and payable monthly for the months of February through July, beginning April 7, 1997 and continuing regularly and monthly until July 7, 1997, then payments of $2,184.00 principal plus interest beginning August 7, 1997 and continuing regularly and monthly through January 7, 1998 said payments will continue in a like manner, monthly and regularly as set out until March 7, 2000; at that time all principal and accrued interest shall be due and payable. Interest computed on the unpaid principal balance is payable monthly as it accrues on the same dates as and in addition to the installments of principal.

**PREFERRED MORTGAGE:**

    **Date:** May 25, 1988

    **Owner:**    Celina Corporation

    **Mortgagee:**    Merchants Marine Bank, assigned to FirstBank (n/k/a First Valley Bank) by the FDIC as receiver for Merchants Marine Bank.

    **Vessel:**    Lucilla Ann (ex Champion Clipper)        **Official No.:** 537958

    **Recording information:** recorded on July 12, 1988, Book No. PM-172, Instrument No. I-199

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date.

If Maker defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, and the default continues after Payee gives Maker notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest, to the extent permitted by law.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including attorney's fees of Fifteen Percent (15%) of the principal and interest then due on this Note.

Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

This note is given in renewal and extension, but not in extinguishment of the note dated May 25, 1988 described herein.

Each Maker is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

If any installment becomes overdue for more than ten (10) days, at Payee's option, five percent (5%) of the overdue installment amount will be charged in order to defray the expense of handling the delinquent payment.

**THIS NOTE AND THE INSTRUMENTS BEING EXECUTED ALONG WITH IT REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Celina Corporation

By: *Enriqueta H. Barrera*

File No.: 972166
Loan No.: 271764506

## RENEWAL AND MODIFICATION NOTE

**DATE:** April 7, 2000          **ORIGINAL NOTE DATE:** May 25, 1988

**MAKER:** Celina Corporation

**MAKER'S MAILING ADDRESS:** P.O. Box 711, Port Isabel, Texas 78578

**PAYEE:** Norwest Bank Texas, N.A., successor in interest to First Valley Bank, fka FirstBank, assignee of the FDIC as receiver for Merchants Marine Bank

**PLACE FOR PAYMENT:** 1800 W. Highway 100, Port Isabel, Texas 78578

**PRINCIPAL AMOUNT:** $28,973.07          **ORIGINAL NOTE AMOUNT:** $125,722.83

**ANNUAL INTEREST ON UNPAID PRINCIPAL FROM DATE:** The interest on this Note is subject to change from time to time based on changes in an index which is the NORWEST BANK TEXAS, N.A. BASE RATE (the "index"). THE INDEX IS THE RATE ESTABLISHED FROM TIME TO TIME BY NORWEST BANK, N.A. AS ITS BASE RATE. Lender will tell me the current index rate upon my request. I understand that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. The Index currently is **9.00%** per annum. The interest rate to be applied prior to maturity to the unpaid principal balance of this Note will be at a rate of **2.00 percentage points** over the Index, adjusted if necessary for the maximum rate limitation described below, resulting in an initial rate of **11.00%** per annum. Notwithstanding any other provision of this Note, the variable interest rate or rates provided for in this Note will be subject to the following maximum rate. NOTICE: Under no circumstances will the interest rate on this Note be more than the lesser of 18.000% per annum or the maximum rate allowed by applicable law. For purposes of this Note, the "maximum rate allowed by applicable law: means the greater of (a) the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Note, or (b) the "Weekly Rate" as referred to in Section 303.201 of the Texas Finance Code and Articles 10.002 and 10.003 of the Texas Credit Title. Unless waived by Lender, any increase in the Interest rate will increase the amounts of my interest payments.

**TERMS OF PAYMENT:**   Payments of interest only shall be due and payable monthly for the months of February through July, beginning May 7, 2000 and continuing regularly and monthly until July 7, 2000, then payments of $2,184.00 principal plus interest beginning August 7, 2000, and continuing regularly and monthly through January 7, 2001, said payments will continue in a like manner, monthly and regularly as set out until September 7, 2002; at that time all principal and accrued interest shall be due and payable. Interest computed on the unpaid principal balance is payable monthly as it accrues on the same dates as and in addition to the installments of principal.

**PREFERRED MORTGAGE:**

   **Date:**  May 25, 1988

   **Owner:**  Celina Corporation
   **Mortgagee:**  Merchants Marine Bank, assigned to Norwest Bank Texas, N.A., successor in interest to First Valley Bank, fka FirstBank

   **Vessel:** Lucilla Ann          **Official No.:   537958**

   **Recording information:** Book No. PM-172, Instrument No. I-199

1

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date.

If Maker defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, and the default continues after Payee gives Maker notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest, to the extent permitted by law.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including attorney's fees of Fifteen Percent (15%) of the principal and interest then due on this Note.

Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

This note is given in renewal and extension, but not in extinguishment of the note dated May 25, 1988 described herein.

Each Maker is responsible for all obligations represented by this note.

When the context requires, singular nouns and pronouns include the plural.

**THIS NOTE AND THE INSTRUMENTS BEING EXECUTED ALONG WITH IT REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Celina Corporation

By: _Enriqueta Barrera_

2

### RENEWAL, ENLARGEMENT AND MODIFICATION NOTE

**DATE:** May 10, 2000          **ORIGINAL NOTE DATE:** May 25, 1988

**MAKER:** Celina Corporation

**MAKER'S MAILING ADDRESS:** P.O. Box 711, Port Isabel, Texas 78578

**PAYEE:** Wells Fargo Bank Texas, N.A. (payee in original note was Merchants Marine Bank, the note was Assigned to FirstBank [now known as Wells Fargo Bank Texas, N.A.] by instrument dated April 19, 1991)

**PLACE FOR PAYMENT:** 1800 W. Highway 100, Port Isabel, Texas 78578

**PRINCIPAL AMOUNT:** $68,973.07          **ORIGINAL NOTE AMOUNT:** $125,772.83

**ANNUAL INTEREST ON UNPAID PRINCIPAL FROM DATE:** The interest on this Note is subject to change from time to time based on changes in an index which is the WELLS FARGO BANK TEXAS, N. A. BASE RATE (the "index"). THE INDEX IS THE RATE ESTABLISHED FROM TIME TO TIME BY WELLS FARGO BANK, N. A. AS ITS BASE RATE. Lender will tell me the current index rate upon my request. I understand that Lender may make loans based on other rates as well. The interest rate change will not occur more often than each day. The Index currently is **9.00%** per annum. The interest rate to be applied prior to maturity to the unpaid principal balance of this Note will be at a rate of **1.50 percentage** points over the Index, adjusted if necessary for the maximum rate limitation described below, resulting in an initial rate of **10.50%** per annum. Notwithstanding any other provision of this Note, the variable interest rate or rates provided for in this Note will be subject to the following maximum rate. NOTICE: Under no circumstances will the interest rate on this Note be more than the lesser of 18.000% per annum or the maximum rate allowed by applicable law. For purposes of this Note, the "maximum rate allowed by applicable law: means the greater of (a) the maximum rate of interest permitted under federal or other law applicable to the indebtedness evidenced by this Note, or (b) the "Weekly Rate" as referred to in Section 303.201 of the Texas Finance Code and Articles 10.002 and 10.003 of the Texas Credit Title. Unless waived by Lender, any increase in the Interest rate will increase the amounts of my interest payments.

**TERMS OF PAYMENT:** Payments of interest only shall be due and payable monthly for the months of February through July, beginning June 10, 2000 and continuing regularly and monthly through July 10, 2000, then payments of $2,184.00 principal plus interest beginning August 10, 2000 and continuing regularly and monthly through January 10, 2001; said payments will continue in a like manner, monthly and regularly as set out until May 10, 2003; at that time all principal and accrued interest shall be due and payable. Interest computed on the unpaid principal balance is payable monthly as it accrues on the same dates as and in addition to the installments of principal.

**PREFERRED MORTGAGE:**

> **Date:** May 25, 1988          **Owner:**    Celina Corporation
> **Mortgagee:** Wells Fargo Bank Texas, N.A.
> **Vessel:** Lucilla Ann **Official No.:** 537958
> **Recording information:** recorded on July 20, 1988, Book PM-172, Instrument I-199.

**EXHIBIT B**
**Page 11 of 12**

**The note is additionally secured by a security interest created in a security agreement executed by Enriqueta Barrera which grants a security interest in Certificate of Deposit No. 7950519812 in the principal amount of $75,000.00 issued by Norwest Bank Texas, N.A.**

Maker promises to pay to the order of Payee at the place for payment and according to the terms of payment the principal amount plus interest at the rates stated above. All unpaid amounts shall be due by the final scheduled payment date.

If Maker defaults in the payment of this note or in the performance of any obligation in any instrument securing or collateral to it, and the default continues after Payee gives Maker notice of the default and the time within which it must be cured, as may be required by law or by written agreement, then Payee may declare the unpaid principal balance and earned interest on this note immediately due. Maker and each surety, endorser, and guarantor waive all demands for payment, presentations for payment, notices of intention to accelerate maturity, notices of acceleration of maturity, protests, and notices of protest, to the extent permitted by law.

If suit is brought on this Note, or if it is placed in the hands of an attorney for collection, or collected through the probate or Bankruptcy Courts, the undersigned agrees to pay the expenses of collection, including attorney's fees of Fifteen Percent (15%) of the principal and interest then due on this Note.

Interest on the debt evidenced by this note shall not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law; any interest in excess of that maximum amount shall be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess shall be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides other provisions in this and all other instruments concerning the debt.

This note is given in renewal and extension, but not in extinguishment of the note dated May 25, 1988 described herein.

Each Maker is responsible for all obligations represented by this note. When the context requires, singular nouns and pronouns include the plural.

**THIS NOTE AND THE INSTRUMENTS BEING EXECUTED ALONG WITH IT REPRESENT THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

Celina Corporation

By: _Enriqueta Barrera_

Enriqueta Barrera, President

ficial No. _____
537958

**This First Preferred Mortgage,** on the vessel(s) — CHAMPION CLIPPER —

dated __May 25,__ _____ 19 88

Amount of Mortgage $ 125,772.83

Maturity Date __July 20,__ _____ 19 88

and made by __Celina Corporation (Sole Mortgagor)__
__P.O. Box 711, Port Isabel, Texas 78578__
(hereinafter called "Owner"), to __Merchants Marine Bank (Sole Mortgagee)__
__P.O. Box 1048, Port Isabel, Texas 78578__ (hereinafter called "Mortgagee").

## WITNESSETH:

WHEREAS, the maker, Mortgagor herein, is the sole owner of the whole of the vessel (if more than one vessel is mortgaged hereunder, the term "vessel" means each such vessel) hereinafter named and described, and is justly indebted to the Mortgagee, as evidenced by promissory note dated __May 25,__ _____ 19 88 in the principal amount of $ 125,772.83 payable to the order of Mortgagee as follows:

As therein provided.

and has agreed to give this Mortgage as security, and has authorized and directed the execution and delivery hereof;

NOW, THEREFORE, in consideration of the premises and for other goods and valuable considerations, receipt of all of which is hereby acknowledged, and to secure payment of said indebtedness and interest and other sums that hereafter may become due pursuant hereto and the performance of all covenants hereof, Owner by these presents mortgages and conveys unto Mortgagee, its successors and assigns, the whole of the ___Oil Screw___ (Type of Vessel) named below and further described in her (their) last marine document(s) issued and identified as follows:

| Name | Home Port | Official Number | Gross Tons | Net Tons |
|---|---|---|---|---|
| CHAMPION CLIPPER | Houston, Texas | 537958 | 103 | 70 |

| Enrollment Number | Place Issued | Date Issued |
|---|---|---|
| | | |

together with all masts, boilers, cables, engines, machinery, bowsprits, sails, rigging, boats, anchors, chains, tackle, apparel, furniture, fittings, tools, pumps, equipment and supplies, and all fishing and other appurtenances and accessories and additions, improvements and replacements now or hereafter belonging thereto, whether or not removed therefrom, all of which shall be deemed to be included in the term "vessel" herein, and said document(s) being deemed included herein by reference;

TO HAVE AND TO HOLD all and singular the above described vessel unto Mortgagee, its successors and assigns, forever;

PROVIDED, HOWEVER, that if Owner, his heirs, executors, administrators or its successors or assigns shall perform and observe all and singular the terms, covenants and agreements herein, then this Mortgage shall cease, otherwise to remain in full force and effect.

Nothing herein shall be deemed or construed to subject to the lien hereof any property other than a vessel as the term is used in the Ship Mortgage Act, 1920.

Owner agrees to pay said indebtedness with interest thereon as herein and in said note provided, and to perform and observe the further terms, covenants and agreements herein, and to hold the vessel subject therein.

### ARTICLE I. — Particular Covenants of Owner

Owner covenants as follows:

1. Owner is and shall continue to be a citizen of the United States entitled to own and operate the vessel under her marine document, which Owner shall maintain in full force and effect; and all action necessary for the execution, delivery and validity hereof and of the good faith affidavit filed herewith and of said note has been duly taken. If a corporation, Owner is duly organized and is and shall continue in good standing under the laws of the State of ___Texas___ and authorized to do business and in good standing in any other State wherein Owner regularly does business.

2. Owner lawfully owns and possesses the vessel free from all liens and encumbrances whatsoever except as may hereinbelow be specified and shall warrant and defend title to and possession of all and every part thereof for the benefit of Mortgagee against all persons whomsoever. Owner shall not set up against Mortgagee and/or any assignee of this Mortgage any claim of Owner against Mortgagee and/or assignee under any past or future transaction.

3. Owner shall at his (its) own expense, keep the vessel fully and adequately insured under usual full marine insurance with policy valuation not exceeding the amount insured, and, in the aggregate as to all vessels mortgaged herein, in at least the amount of the unpaid principal balance of this Mortgage, and shall maintain insurance to cover protection and indemnity risks, tower's liability risks if the vessel performs towage, employees' compensation and/or other risks and liabilities from time to time specified by Mortgagee. All insurance shall be taken out in the name of Owner and shall by its terms be payable to Mortgagee for account of Mortgagee and Owner as their respective interests may appear, and all policy forms, underwriters and amounts shall be subject to Mortgagee's approval. Owner shall notify, and shall request underwriters to agree reasonably in advance to notify, Mortgagee of any cancellation or material change in any insurance coverage. All policies, binders and cover notes shall be delivered to Mortgagee with evidence satisfactory to it that all premiums and other charges therefor have been fully paid. Owner shall maintain all such insurance unimpaired by any act, breach of warranty or otherwise.

4. Owner shall comply with and not permit the vessel to be operated contrary to any provision of the laws, treaties, conventions, rules, regulations or orders of the United States, any State and/or any other jurisdiction wherein operated, and/or of any department or agency thereof; nor remove the vessel from the limits of the United States save on voyage with the intent of returning, nor abandon the vessel in any foreign port. Owner shall do everything necessary to establish and maintain this Mortgage as a First Preferred Mortgage on said vessel.

EXHIBIT C
Page 1 of 4

5. Neither the Owner, Agent nor Master of the vessel has or shall have any right, power or authority to create, incur or permit to be placed or imposed on the vessel or any part thereof any lien whatsoever other than the Mortgagee or for crew's wages or salvage.

6. Owner shall place and keep prominently in the pilot house (if any), chart room or Master's cabin or elsewhere on the vessel as specified by Mortgagee any notice of this Mortgage required by Mortgagee, and shall keep a proper copy hereof with the ship's papers and exhibit the same to all persons having business with the vessel, and to Mortgagee on demand.

7. Owner shall pay when due all taxes, assessments, governmental charges, fines and penalties lawfully imposed and promptly discharge any and all liens whatsoever upon the vessel. Owner shall at his (its) own expense at all times maintain the vessel in thorough repair and working order and shall make all proper renewals and replacements.

8. If the vessel shall be libeled, attached, detained, seized or levied upon or taken into custody under process or under color of any authority, Owner shall forthwith notify Mortgagee by telegram, confirmed by letter, and forthwith discharge or release the vessel therefrom, and in any event within fifteen (15) days after such libel, attachment, detention, seizure, levy or taking into custody.

9. Owner shall at all times afford Mortgagee complete opportunity to inspect the vessel and cargoes and papers thereof, and to examine Owner's related accounts and records; and shall certify quarterly and, if Mortgagee requests, monthly, that all wages and all other claims whatsoever which might have given rise to a lien upon the vessel have been paid.

10. Owner shall not, without the prior written consent of Mortgagee, sell or mortgage the vessel or any interest therein nor charter her except to persons and for uses lawful for American vessels and then only provided said insurance be unaffected thereby or adequately replaced; nor, if a corporation, merge or consolidate with any other person, firm or corporation, or dissolve.

11. From time to time Owner shall execute and deliver such other and further instruments and assurance as in the opinion of Mortgagee's counsel may be required to subject the vessel more effectually to the lien hereof and to the payment of said indebtedness and for operation of the vessel as herein provided, and to effectuate sales as provided in paragraph (C) of Section 1 of Article II.

## ARTICLE II. — *Default*

1. In any one or more of the following events, herein termed "events of default," viz.:

(a) Default in the punctual payment of the principal of the note secured hereby or any installment thereof, or in the due and punctual performance of any provision of Sections 3, 4, 5, 6, 8 and 10 of Article I hereof, or attempt to violate Sections 4 or 10 of Article I hereof, or default continuing for fifteen (15) days in the performance of any other covenant herein; or

(b) Commission of an act of bankruptcy by Owner or approval by any court of a petition or answer asking for reorganization, arrangement, extension or other relief under any bankruptcy law; or appointment of a receiver for Owner or any of Owner's property or the taking by any court of any action comparable thereto; or rendition of a final judgment against Owner for the payment of money and failure of Owner to discharge the same within ninety (90) days or stay the execution thereof pending appeal; or Mortgagee's conclusion in good faith at any time that, through actual or prospective impairment of Owner's net current asset position, net worth, asset-liability ratio, or earnings, or through prospective violation of any provision of this Mortgage, Mortgagee is in danger of losing said debt, or any part thereof, by delaying collection thereof until the time above limited for the payment thereof;

then, and in every such case, Mortgagee may:

(A) Declare the principal of said note and all accrued interest thereon to be and they shall then become and be due and payable forthwith, after which they shall bear interest at the rate of 10% per annum;

(B) Recover judgment for, and collect out of any property of Owner, any amount thereby or otherwise due hereunder, and/or collect all earned charter hire and freight monies relating to services performed by the vessel, Owner hereby assigning to Mortgagee such earned charter hire and freight monies then owing; and/or

(C) Retake the vessel without legal process at any time wherever the same may be, and, without being responsible for loss or damage, hold and in Mortgagee's or in Owner's name lease, charter, operate or otherwise use the vessel for such time and on such terms as Mortgagee may deem advisable, being accountable for net profits, if any, and with the right to dock the vessel free of charge at Owner's premises or elsewhere at Owner's expense; and/or sell the vessel, free from any claim by Owner of any nature whatsoever, in the manner provided by law; to the extent permitted by law, such sale may be public or private, without notice, without impairing the vessel present, and/or Mortgagee may become the purchaser.

For such purpose Mortgagee and its agents are hereby irrevocably appointed the true and lawful attorneys of Owner in his (its) name and stead to make all necessary transfers of the vessel thus sold.

2. In the event that the vessel shall be arrested or detained by any officer of any court or by any other authority, Owner hereby authorizes Mortgagee, its officers, representatives and appointees, in the name of Owner or of Mortgagee, to receive or to take possession thereof, and to defend any action and/or discharge any lien.

3. Each and every power or remedy herein given to Mortgagee shall be cumulative, and in addition to all powers or remedies now or hereafter existing in admiralty, in equity, at law or by statute, and may be exercised as often as may be deemed expedient by Mortgagee. No delay or omission by Mortgagee shall impair any right, power or remedy, and no waiver of any default shall waive any other default. In any suit Mortgagee shall be entitled to obtain appointment of a receiver of the vessel and the earnings thereof, who shall have full rights and powers to use and operate the vessel, and to obtain a decree ordering and directing the sale and disposition thereof.

4. The net proceeds of any judicial or other sale, and any charter, management, operation or other use of the vessel by Mortgagee, of any claim for damages, of any judgment and any insurance received by Mortgagee (except to the extent paid to Owner or applied in payment of repairs or otherwise for Owner's benefit) shall be applied as follows:

FIRST: To the payment of all attorney's fees, court costs, and any other expenses, losses, charges, damages incurred or advances made by Mortgagee in the protection of its rights or caused by Owner's default hereunder or under the note secured hereby, with interest on all such amounts at the rate of 10% per annum; and to provide adequate indemnity against any liens for which priority over this Mortgage is claimed;

SECOND: To the payment of all interest, to date of payment, on the note and any or all other sums secured hereby, and as to any balance of such proceeds, to the payment next of any or all matured installments of principal and then of any or all unmatured installments of principal in the inverse order of their maturity.

Mortgagee shall be entitled to collect any deficiency from Owner. Owner shall be entitled to any surplus, subject to set-off in favor of Mortgagee for any other indebtedness of Owner.

5. All advances and expenditures which Mortgagee in its discretion may make for repairs, insurance, payment of liens or other claims, defense of suits, or for any other purpose whatsoever related hereto or to said note and all damages sustained by Mortgagee because of defaults, shall be repaid by Owner on demand with interest at 10% per annum, and until so paid shall be a debt due from Owner to Mortgagee secured by the lien hereof. Mortgagee shall not be obligated to make any such advances or expenditures, nor shall the making thereof relieve Owner of any obligation or default with respect thereto.

EXHIBIT C
Page 2 of 4

ARTICLE III. — *Possession Until Default*

Until one or more of the events of default hereinbefore described, Owner shall be permitted to retain actual possession and use of the vessel.

ARTICLE IV. — *Sundry Provisions*

All covenants and agreements of Owner herein contained shall bind Owner, his heirs, executors, administrators and assigns, or its successors and assigns, and shall inure to the benefit of Mortgagee and its successors and assigns. Following any assignment hereof, any reference herein to "Mortgagee" shall be deemed to refer to the assignee. If more than one person is the Owner herein, "his" shall mean "their."

FUTURE ADVANCES   This mortgage is executed for the purpose of securing not only the payment of the above described note but also to secure all future advances made by the holder of said note to the mortgagor; and said mortgage shall remain in full force and effect to secure all future advances and all renewals or extensions of the above described note.

IN WITNESS WHEREOF, on the day and year first above written, Owner has executed this Mortgage or, if a corporation, has caused this Mortgage to be executed in its name ᴋᴋᴋᴋᴋ ᴋᴋᴋᴋᴋᴋᴋ ᴋᴋᴋᴋ ᴋᴋ ᴋᴋᴋᴋ ᴋᴋᴋᴋᴋ by its proper officers thereunto duly authorized.

CELINA CORPORATION

By *Wm B Barrera*
   Wm. B. Barrera, President

ACKNOWLEDGMENT

THE STATE OF TEXAS    }

COUNTY OF CAMERON     }

This instrument was acknowledged before me this 25th day of May, 1988 by Wm. B. Barrera, President of CELINA CORPORATION, a Texas Corporation, on behalf of said corporation.

_____
Notary Public, State of Texas

My Commission Expires:  5-16-91

AFFIDAVIT AS TO GOOD FAITH, LIENS, ETC.

STATE OF _____Texas_____, COUNTY OF _____Cameron_____, ss.:

_____Wm. B. Barrera_____
being (severally) duly sworn, depose(s) and say(s) that   he is (they are) the (individual) (individuals) (or)
( President ) of ____Celina Corporation____ the corporation/described in and who (which) executed the foregoing mortgage; and that the said mortgage is made in good faith and without any design to hinder, delay, or defraud any existing or future creditors of the Mortgagor or any lienor of the mortgaged vessel(s). There are no liens, encumbrances, charges or mortgages outstanding against said vessel, other than the lien of the foregoing mortgage.

If Mortgagor is a corporation, this affidavit is made pursuant to authority of its Board of Directors.

Subscribed and sworn to before me this __25th__

day of __May__ 19 __88__.          Celina Corporation

(SEAL)

_____          By: *Wm B Barrera*
       (Notary Public)                 Signature(s) of Affiant(s)
   State of Texas                   Wm. B. Barrera, President

OATH OF CITIZENSHIP OF PROPER OFFICER OF MORTGAGEE IS FILED
SIMULTANEOUSLY WITH PRESENTATION OF THIS MORTGAGE FOR RECORDING.

EXHIBIT C
Page 3 of 4



EXHIBIT C
Page 4 of 4

THE STATE OF TEXAS  §

COUNTY OF HARRIS  §

EIGHTH COAST GUARD DISTRICT
PORT OF HOUSTON, TEXAS  JUN 13 1991
RECEIVED FOR RECORD ON
AT ___10 10 AM___ o'clock AND RECORDED
IN BOOK NO. _PM 248___ INST. ___71___

Vessel Documentation Specialist

## ASSIGNMENT OF MORTGAGE

KNOW ALL MEN BY THESE PRESENTS:  That, for value received, FEDERAL DEPOSIT INSURANCE CORPORATION, having an office address of 7324 Southwest Freeway, Suite 1600, Houston, Harris County, Texas, 77074, in its corporate capacity as Liquidator for MERCHANTS MARINE BANK, 100% Mortgagee and Assignor herein, hereby ASSIGNS, TRANSFERS and SETS OVER without recourse to FIRSTBANK, a Texas state chartered banking institution, having an office address of 1800 W. Hwy. 100 (P.O. Drawer AM), Port Isabel, Cameron County, Texas 78578, Assignee herein and 100% Mortgagee by virtue of the within assignment, all of its right, title and 100% interest in and to that certain Promissory Note dated May 25, 1988 in the original principal sum of ONE HUNDRED TWENTY FIVE THOUSAND SEVEN HUNDRED SEVENTY-TWO AND 83/100 DOLLARS ($125,772.83), and any and all modifications, renewals, extensions, and/or rearrangements thereof, together with 100% of its interest in and to the lien securing same, to-wit:  a First Preferred Ship's Mortgage dated May 25, 1988 in the amount of ONE HUNDRED TWENTY FIVE THOUSAND SEVEN HUNDRED SEVENTY-TWO AND 83/100 DOLLARS ($125,772.83), covering the whole of the Oil Screw LUCILA ANN, Official No. 537958, gross tons 103, net tons 70, together with all such appurtenances and accessories and replacements of and additions and improvements to said vessel as are included in the definition "vessel" in said Mortgage, said marine documents, as well as any marine documents covering said vessel issued in substitution therefor, being deemed included herein by reference, which Mortgage was filed of record in the office of the United States Coast Guard, Port of Houston, Texas on the 12th day of July, 1988 at 2:30 P.M. in Book PM-172, as Instrument No. I-199.

Assignor consents that without notice to Assignor and without affecting Assignor's liability hereunder, Assignee may release, by operation of law or otherwise, or compromise or adjust any and all rights against and grant extensions of time of payment to the Mortgagor or any other persons obligated on the Mortgage, or Note or Notes, or consent to the transfer of the vessel and the obligation.

This transfer and assignment is without recourse or warranty, express or implied, upon or by the undersigned Assignor, except that Assignor represents that (1) Assignor is the owner and holder of the Promissory Note and of the liens securing same, (2) the Note and such liens have not been assigned to any other person or entity and, after giving effect to this agreement, no person or entity either than Assignee shall retain any interest acquired from

EXHIBIT D
Page 1 of 2

Assignor in such Promissory Note or liens, and (3) Assignor has the full authority to assign and transfer said Promissory Note and liens.

DATED this 19th day of April, 1991.

FEDERAL DEPOSIT INSURANCE CORPORATION
in its corporate capacity as Liquidator
for MERCHANTS MARINE BANK

BY: _____
Attorney-in-Fact for Federal Deposit
Insurance Corporation,
Bank Liquidation Specialist

ATTEST:

James W. McAnally

## ACKNOWLEDGMENT

THE STATE OF TEXAS    §

COUNTY OF HARRIS      §

BEFORE ME, the undersigned authority, on this day personally appeared James W. McAnally, Attorney-in-Fact for the FEDERAL DEPOSIT INSURANCE CORPORATION, known to me to be the person whose name is subscribed to the above and foregoing instrument, and acknowledged to me that he executed same for the purposes and consideration therein expressed and in the capacity therein stated as the act and deed of the FEDERAL DEPOSIT INSURANCE CORPORATION.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this 19th day of April, 1991.

Dorothy Brooks Walker
Notary Public in and for the
State of Texas

My Commission Expires:

DOROTHY BROOKS WALKER
Notary Public
STATE OF TEXAS
My Comm. Exp. OCT 19, 1993

EXHIBIT D
Page 2 of 2

# COMMERCIAL GUARANTY

| Principal | Loan Date | Maturity | Loan No | Call | Collateral | Account | Officer | Initials |
|---|---|---|---|---|---|---|---|---|

References in the shaded area are for Lender's use only and do not limit the applicability of this document to any particular loan or item.

**Borrower:** CELINA CORPORATION (TIN: 74-2301378)
PORT ROAD
PORT ISABEL, TX 78578

**Lender:** NORWEST BANK TEXAS, N.A.
PORT ISABEL OFFICE
1800 W. HIGHWAY 100
PORT ISABEL, TX 78578

**Guarantor:** ENRIQUETA H. BARRERA
P. O. BOX 711
PORT ISABEL, TX 78578

**AMOUNT OF GUARANTY.** The amount of this Guaranty is 100.000% of all amounts due now or later from Borrower to Lender as provided below without limit.

**CONTINUING UNLIMITED GUARANTY.** For good and valuable consideration, ENRIQUETA H. BARRERA ("Guarantor") absolutely and unconditionally guarantees and promises to pay to NORWEST BANK TEXAS, N.A. ("Lender") or its order, in legal tender of the United States of America, 100.000% of the Indebtedness (as that term is defined below) of CELINA CORPORATION ("Borrower") to Lender on the terms and conditions set forth in this Guaranty. Under this Guaranty, the liability of Guarantor is unlimited and the obligations of Guarantor are continuing. Guarantor agrees that Lender, in its sole discretion, may determine which portion of Borrower's Indebtedness to Lender is covered by Guarantor's percentage guaranty.

**DEFINITIONS.** The following words shall have the following meanings when used in this Guaranty.

**Borrower.** The word "Borrower" means CELINA CORPORATION.

**Guarantor.** The word "Guarantor" means ENRIQUETA H. BARRERA.

**Guaranty.** The word "Guaranty" means this Guaranty made by Guarantor for the benefit of Lender dated April 7, 2000.

**Indebtedness.** The word "Indebtedness" is used in its most comprehensive sense and means and includes any and all of Borrower's liabilities, obligations, debts, and indebtedness to Lender, now existing or hereinafter incurred or created, including, without limitation, all loans, advances, interest, costs, attorneys' fees, debts, overdraft indebtedness, credit card indebtedness, lease obligations, other obligations, and liabilities of Borrower, or any of them, and any present or future judgments against Borrower, or any of them; and whether any such indebtedness is voluntarily or involuntarily incurred, due or not due, absolute or contingent, liquidated or unliquidated, determined or undetermined; whether Borrower may be liable individually or jointly with others, or primarily or secondarily, or as guarantor or surety; whether recovery on the indebtedness may be or may become barred or unenforceable against Borrower for any reason whatsoever; and whether the indebtedness arises from transactions which may be voidable on account of infancy, insanity, ultra vires, or otherwise.

**Lender.** The word "Lender" means NORWEST BANK TEXAS, N.A., its successors and assigns.

**Related Documents.** The words "Related Documents" mean and include without limitation all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**NATURE OF GUARANTY.** Guarantor's liability under this Guaranty shall be open and continuous for so long as this Guaranty remains in force. Guarantor intends to guarantee at all times the performance and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of all Indebtedness. Accordingly, no payments made upon the Indebtedness will discharge or diminish the continuing liability of Guarantor in connection with any remaining portions of the Indebtedness or any of the Indebtedness which subsequently arises or is thereafter incurred or contracted.

**DURATION OF GUARANTY.** This Guaranty will take effect when received by Lender without the necessity of any acceptance by Lender, or any notice to Guarantor or to Borrower, and will continue in full force until all Indebtedness incurred or contracted before received by Lender of any notice of revocation shall have been fully and finally paid and satisfied and all other obligations of Guarantor under this Guaranty shall have been performed in full. If Guarantor elects to revoke this Guaranty, Guarantor may only do so in writing. Guarantor's written notice of revocation must be mailed to Lender, by certified mail, at the address of Lender listed above or such other place as Lender may designate in writing. Written revocation of this Guaranty will apply only to advances or new indebtedness created after actual receipt by Lender of Guarantor's written revocation and Lender's written acknowledgment of receipt. For this purpose and without limitation, the term "new indebtedness" does not include indebtedness which at the time of notice of revocation is contingent, unliquidated, undetermined or not due and which later becomes absolute, liquidated, determined or due. This Guaranty will continue to bind Guarantor for all indebtedness incurred by Borrower or committed by Lender prior to receipt of Guarantor's written notice of revocation, including any extensions, renewals, substitutions or modifications of the indebtedness. All renewals, extensions, substitutions, and modifications of the indebtedness granted after Guarantor's revocation, are contemplated under this Guaranty and, specifically will not be considered to be new indebtedness. This Guaranty shall bind the estate of Guarantor as to indebtedness created both before and after the death or incapacity of Guarantor, regardless of Lender's actual notice of Guarantor's death. Subject to the foregoing, Guarantor's executor or administrator or other legal representative may terminate this Guaranty in the same manner in which Guarantor might have terminated it and with the same effect. Release of any other guarantor or termination of any other guaranty of the indebtedness shall not affect the liability of Guarantor under this Guaranty. A revocation received by Lender from any one or more Guarantors shall not affect the liability of any remaining Guarantors under this Guaranty. It is anticipated that fluctuations may occur in the aggregate amount of indebtedness covered by this Guaranty, and it is specifically acknowledged and agreed by Guarantor that reductions in the amount of indebtedness, even to zero dollars ($0.00), prior to written revocation of this Guaranty by Guarantor shall not constitute a termination of this Guaranty. This Guaranty is binding upon Guarantor and Guarantor's heirs, successors and assigns so long as any of the guaranteed indebtedness remains unpaid and even though the indebtedness guaranteed may from time to time be zero dollars ($0.00).

**GUARANTOR'S AUTHORIZATION TO LENDER.** Guarantor authorizes Lender, either before or after any revocation hereof, without notice or demand and without lessening or otherwise affecting Guarantor's liability under this Guaranty, from time to time: (a) prior to revocation as set forth above, to make one or more additional secured or unsecured loans to Borrower, to lease equipment or other goods to Borrower, or otherwise to extend additional credit to Borrower; (b) to alter, compromise, renew, extend, accelerate, or otherwise change one or more times the time for payment of other terms of the indebtedness or any part of the indebtedness, including increases and decreases of the rate of interest on the indebtedness; extensions may be repeated and may be for longer than the original loan term; (c) to take and hold security for the payment of this Guaranty or the indebtedness, and to exchange, enforce, waive, subordinate, fail or decide not to perfect, and release any such security, with or without the substitution of new collateral; (d) to release, substitute, agree not to sue, or deal with any one or more of Borrower's sureties, endorsers, or other guarantors on any terms or in any manner Lender may choose; (e) to determine how, when and what application of payments and credits shall be made on the indebtedness; (f) to apply such security and direct the order or manner of sale thereof, including without limitation, any nonjudicial sale permitted by the terms of the controlling security agreement or deed of trust, as Lender in its discretion may determine; (g) to sell, transfer, assign, or grant participations in all or any part of the indebtedness; and (h) to assign or transfer this Guaranty in whole or in part.

**GUARANTOR'S REPRESENTATIONS AND WARRANTIES.** Guarantor represents and warrants to Lender that (a) no representations or agreements of any kind have been made to Guarantor which would limit or qualify in any way the terms of this Guaranty; (b) this Guaranty is executed at Borrower's request and not at the request of Lender; (c) Guarantor has full power, right and authority to enter into this Guaranty; (d) the provisions of this Guaranty do not conflict with or result in a default under any agreement or other instrument binding upon Guarantor and do not result in a violation of any law, regulation, court decree or order applicable to Guarantor; (e) Guarantor has not and will not, without the prior written consent of Lender, sell, lease, assign, encumber, hypothecate, transfer, or otherwise dispose of all or substantially all of Guarantor's assets, or any interest therein; (f) upon Lender's request, Guarantor will provide to Lender financial and credit information in form acceptable to Lender, and all such financial information which currently has been, and all future financial information which will be provided to Lender is and will be true and correct in all material respects and fairly present the financial condition of Guarantor as of the dates the financial information is provided; (g) no material adverse change has occurred in Guarantor's financial condition since the date of the most recent financial statements provided to Lender and no event has occurred which may materially adversely affect Guarantor's financial condition; (h) no litigation, claim, investigation, administrative proceeding or similar action (including those for unpaid taxes) against Guarantor is pending or threatened; (i) Lender has made no representation to Guarantor as to the creditworthiness of Borrower; and (j) Guarantor has established adequate means of obtaining from Borrower on a continuing basis information regarding Borrower's financial condition. Guarantor agrees to keep adequately informed from such means of any facts, events, or circumstances which might in any way affect Guarantor's risks under this Guaranty, and Guarantor further agrees that, absent a request for information, Lender shall have no obligation to disclose to Guarantor any information or documents acquired by Lender in the course of its relationship with Borrower.

**GUARANTOR'S WAIVERS.** Except as prohibited by applicable law, Guarantor waives any right to require Lender (a) to continue lending money or to extend other credit to Borrower; (b) to make any presentment, protest, demand, or notice of any kind, including notice of any nonpayment of the indebtedness or of any nonpayment related to any collateral, or notice of any action or nonaction on the part of Borrower, Lender, any surety, endorser,

EXHIBIT E
Page 1 of 3

04–07–2000
Loan No 9001

**COMMERCIAL GUARANTY**
(Continued)

Page 2

or other guarantor in connection with the indebtedness or in connection with the creation of new or additional loans or obligations; (c) to resort for payment or to proceed directly or at once against any person, including Borrower or any other guarantor; (d) to proceed directly against or exhaust any collateral held by Lender from Borrower, any other guarantor, or any other person; (e) to give notice of the terms, time, and place of any public or private sale of personal property security held by Lender from Borrower or to comply with any other applicable provisions of the Uniform Commercial Code; (f) to pursue any other remedy within Lender's power; or (g) to commit any act or omission of any kind, or at any time, with respect to any matter whatsoever.

Guarantor waives all rights of Guarantor under Chapter 34 of the Texas Business and Commerce Code. Guarantor also waives any and all rights or defenses arising by reason of (a) any "one action" or "anti-deficiency" law or any other law which may prevent Lender from bringing any action, including a claim for deficiency, against Guarantor, before or after Lender's commencement or completion of any foreclosure action, either judicially or by exercise of a power of sale; (b) any election of remedies by Lender which destroys or otherwise adversely affects Guarantor's subrogation rights or Guarantor's rights to proceed against Borrower for reimbursement, including without limitation, any loss of rights Guarantor may suffer by reason of any law limiting, qualifying, or discharging the Indebtedness; (c) any disability or other defense of Borrower, of any other guarantor, or of any other person, or by reason of the cessation of Borrower's liability from any cause whatsoever, other than payment in full in legal tender, of the Indebtedness; (d) any right to claim discharge of the Indebtedness on the basis of unjustified impairment of any collateral for the Indebtedness; (e) any statute of limitations, if at any time any action or suit brought by Lender against Guarantor is commenced there is outstanding Indebtedness of Borrower to Lender which is not barred by any applicable statute of limitations; or (f) any defenses given to guarantors at law or in equity other than actual payment and performance of the Indebtedness. If payment is made by Borrower, whether voluntarily or otherwise, or by any third party, on the Indebtedness and thereafter Lender is forced to remit the amount of that payment to Borrower's trustee in bankruptcy or to any similar person under any federal or state bankruptcy law or law for the relief of debtors, the Indebtedness shall be considered unpaid for the purpose of enforcement of this Guaranty.

Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both.

**GUARANTOR'S UNDERSTANDING WITH RESPECT TO WAIVERS.** Guarantor warrants and agrees that each of the waivers set forth above is made with Guarantor's full knowledge of its significance and consequences and that, under the circumstances, the waivers are reasonable and not contrary to public policy or law. If any such waiver is determined to be contrary to any applicable law or public policy, such waiver shall be effective only to the extent permitted by law or public policy.

**LENDER'S RIGHT OF SETOFF.** In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor's obligations to Lender under this Guaranty and to the extent permitted by law, a contractual security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor's right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor. No security interest or right of setoff shall be deemed to have been waived by any act or conduct on the part of Lender or by any neglect to exercise such right of setoff or to enforce such security interest or by any delay in so doing. Every right of setoff and security interest shall continue in full force and effect until such right of setoff or security interest is specifically waived or released by an instrument in writing executed by Lender.

**SUBORDINATION OF BORROWER'S DEBTS TO GUARANTOR.** Guarantor agrees that the Indebtedness of Borrower to Lender, whether now existing or hereafter created, shall be prior to any claim that Guarantor may now have or hereafter acquire against Borrower, whether or not Borrower becomes insolvent. Guarantor hereby expressly subordinates any claim Guarantor may have against Borrower, upon any account whatsoever, to any claim that Lender may now or hereafter have against Borrower. In the event of insolvency and consequent liquidation of the assets of Borrower, through bankruptcy, by an assignment for the benefit of creditors, by voluntary liquidation, or otherwise, the assets of Borrower applicable to the payment of the claims of both Lender and Guarantor shall be paid to Lender and shall be first applied by Lender to the Indebtedness of Borrower to Lender. Guarantor does hereby assign to Lender all claims which it may have or acquire against Borrower or against any assignee or trustee in bankruptcy of Borrower; provided however, that such assignment shall be effective only for the purpose of assuring to Lender full payment in legal tender of the Indebtedness. If Lender so requests, any notes or credit agreements now or hereafter evidencing any debts or obligations of Borrower to Guarantor shall be marked with a legend that the same are subject to this Guaranty and shall be delivered to Lender. Guarantor agrees, and Lender hereby is authorized, in the name of Guarantor, from time to time to execute and file financing statements and continuation statements and to execute such other documents and to take such other actions as Lender deems necessary or appropriate to perfect, preserve and enforce its rights under this Guaranty.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Guaranty:

**Amendments.** This Guaranty, together with any Related Documents, constitutes the entire understanding and agreement of the parties as to the matters set forth in this Guaranty. No alteration of or amendment to this Guaranty shall be effective unless given in writing and signed by the party or parties sought to be charged or bound by the alteration or amendment.

**Applicable Law.** This Guaranty has been delivered to Lender and accepted by Lender in the State of Texas. If there is a lawsuit, and if the transaction evidenced by this Guaranty occurred in CAMERON County, Guarantor agrees upon Lender's request to submit to the jurisdiction of the courts of CAMERON County, State of Texas. This Guaranty shall be governed by and construed in accordance with the laws of the State of Texas and applicable Federal laws.

**Attorneys' Fees.** In addition to the amount of this Guaranty set forth above, Lender may hire an attorney to help enforce this Guaranty if Guarantor does not pay, and Guarantor will pay Lender's reasonable attorneys' fees. Guarantor also will pay Lender all other amounts actually incurred by Lender as court costs, lawful fees for filing, recording, or releasing to any public office any instrument securing this Guaranty; the reasonable cost actually expended for repossessing, storing, preparing for sale, and selling any security; and fees for noting a lien on or transferring a certificate of title to any motor vehicle offered as security for this Guaranty.

**Notices.** All notices required to be given by either party to the other under this Guaranty shall be in writing, may be sent by telefacsimile (unless otherwise required by law), and, except for revocation notices by Guarantor, shall be effective when actually delivered or when deposited with a nationally recognized overnight courier, or when deposited in the United States mail, first class postage prepaid, addressed to the party to whom the notice is to be given at the address shown above or to such other addresses as either party may designate to the other in writing. All revocation notices by Guarantor shall be in writing and shall be effective only upon delivery to Lender as provided above in the section titled "DURATION OF GUARANTY." If there is more than one Guarantor, notice to any Guarantor will constitute notice to all Guarantors. For notice purposes, Guarantor agrees to keep Lender informed at all times of Guarantor's current address.

**Interpretation.** In all cases where there is more than one Borrower or Guarantor, then all words used in this Guaranty in the singular shall be deemed to have been used in the plural where the context and construction so require; and where there is more than one Borrower named in this Guaranty or when this Guaranty is executed by more than one Guarantor, the words "Borrower" and "Guarantor" respectively shall mean all and any one or more of them. The words "Guarantor," "Borrower," and "Lender" include the heirs, successors, assigns, and transferees of each of them. Caption headings in this Guaranty are for convenience purposes only and are not to be used to interpret or define the provisions of this Guaranty. If a court of competent jurisdiction finds any provision of this Guaranty to be invalid or unenforceable as to any person or circumstance, such finding shall not render that provision invalid or unenforceable as to any other persons or circumstances, and all provisions of this Guaranty in all other respects shall remain valid and enforceable. If any one or more of Borrower or Guarantor are corporations or partnerships, it is not necessary for Lender to inquire into the powers of Borrower or Guarantor or of the officers, directors, partners, or agents acting or purporting to act on their behalf, and any Indebtedness made or created in reliance upon the professed exercise of such powers shall be guaranteed under this Guaranty.

**Waiver.** Lender shall not be deemed to have waived any rights under this Guaranty unless such waiver is given in writing and signed by Lender. No delay or omission on the part of Lender in exercising any right shall operate as a waiver of such right or any other right. A waiver by Lender of a provision of this Guaranty shall not prejudice or constitute a waiver of Lender's right otherwise to demand strict compliance with that provision or any other provision of this Guaranty. No prior waiver by Lender, nor any course of dealing between Lender and Guarantor, shall constitute a waiver of any of Lender's rights or of any of Guarantor's obligations as to any future transactions. Whenever the consent of Lender is required under this Guaranty, the granting of such consent by Lender in any instance shall not constitute continuing consent to subsequent instances where such consent is required and in all cases such consent may be granted or withheld in the sole discretion of Lender.

**ARBITRATION.** Except for "Core Proceedings" under the United States Bankruptcy Code, the bank and the Borrower agree to submit to binding arbitration all claims, disputes and controversies between or among them whether in tort, contract or otherwise (and their respective employees, officers, directors, attorneys, and other agents) arising out of or relating to in any way (i) each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to the Bank, whether such now exists or is hereafter created or incurred, whether it is currently contemplated by the Borrower and Bank, whether any documents evidencing it refer to this Agreement, whether it arises with or without any documents (e.g. obligations created by checking overdrafts), and whether it (i) may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or (ii) any loan or security documents, and any loans' negotiation, execution, collateralization, administration, repayment, modification, extension, substitution, formation, inducement, enforcement, default or termination or (iii)requests for additional credit. Any arbitration proceeding will (i) proceed in PORT ISABEL, Texas; (ii) be governed by the Federal Arbitration Act

(Title 9 of the United States Code); and (iii) be conducted in accordance with the Commercial Arbitration rules of the American Arbitration Association ("AAA").

The arbitration requirement does not limit the right of either party to (i) foreclose against real or personal property collateral; (ii) exercise self-help remedies relating to collateral or proceeds of collateral such as setoff or repossession; or (iii) obtain provisional ancillary remedies such as replevin, injunctive relief, attachment or the appointment of a receiver, before during or after the pendency or any arbitration proceeding. This exclusion does not constitute a waiver of the right or obligation of either party to submit any dispute to arbitration, including those arising from the exercise of the actions detailed in sections (i), (ii), and (iii) of this paragraph.

Any arbitration proceeding will be before a single arbitrator selected according to the Commercial Arbitration Rules of the AAA. The arbitrator will be neutral attorney who has practiced in the area of commercial law for a minimum of ten years. The arbitrator will determine whether or not an issue is arbitrable and will give effect to the statutes of limitation in determining any claim. Judgement upon the award rendered by arbitrator may be entered in any court having jurisdiction.

**Motion Practice.** In any arbitration proceeding the arbitrator will decide (by documents only or with a hearing at the arbitrator's discretion) any pre-hearing motions which are similar to motions to dismiss for failure to state a claim or motions for summary adjudication.

**Discovery.** In any arbitration proceedings discovery will be permitted and will be governed by the Texas Rules of Civil Procedure. All discovery must be completed no later than 20 days before the hearing date and within 180 days of the commencement of arbitration proceedings. Any requests for an extension of the discovery periods, or any discovery disputes, will be subject to final determination by the arbitrator upon a showing that the request for discover is essential for the party's presentation and that no alternative means for obtaining information is available.

**Payment of Arbitration Costs and Fees.** The arbitrator shall award costs and expenses of the arbitration proceeding in accordance with the provisions of the loan agreement, promissory note and/or other loan documents..

**NAME CHANGE.** Norwest Bank Texas, National Association will change/changed its name to Wells Fargo Bank Texas, National Association effective April 14, 2000.

**EACH UNDERSIGNED GUARANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS GUARANTY AND AGREES TO ITS TERMS. IN ADDITION, EACH GUARANTOR UNDERSTANDS THAT THIS GUARANTY IS EFFECTIVE UPON GUARANTOR'S EXECUTION AND DELIVERY OF THIS GUARANTY TO LENDER AND THAT THE GUARANTY WILL CONTINUE UNTIL TERMINATED IN THE MANNER SET FORTH IN THE SECTION TITLED "DURATION OF GUARANTY." NO FORMAL ACCEPTANCE BY LENDER IS NECESSARY TO MAKE THIS GUARANTY EFFECTIVE. THIS GUARANTY IS DATED APRIL 7, 2000.**

GUARANTOR:

X _Enriqueta Barrera_
ENRIQUETA H. BARRERA

LASER PRO, Reg. U.S. Pat. & T.M. Off., Ver. 3.28c (c) 2000 CFI ProServices, Inc. All rights reserved. [TX-E20 E3.28 46924.LN C5.OVL]

## AMENDMENT TO FIRST PREFERRED MORTGAGE

THE STATE OF TEXAS        §
                          §        KNOW ALL MEN BY THESE PRESENTS:
COUNTY OF CAMERON         §

THAT, on May 25, 1988, Celina Corporation (100% Mortgagor and sole owner) of P.O. Box 711, Port Isabel, Cameron County, Texas 78578, executed a First Preferred Mortgage on the Champion Clipper, Official Number 537958, in favor of Merchants Marine Bank (100% Mortgagee) of P.O. Box 1048, Port Isabel, Cameron County, Texas 78578, as recorded in the Coast Guard Records under Book PM-172, Instrument No. I-199 on July 12, 1988; and

THAT the mortgage was assigned to FirstBank (n/k/a First Valley Bank) by the FDIC as receiver for Merchants Marine Bank

THAT the address of First Valley Bank is 203 N. Arroyo Blvd., Los Fresnos, Texas 78566

THAT the initial amount of the mortgage was $125,772.83, that the balance due as of the date of this amendment is $65,500.00

THAT the maturity date of the note has been extended to March 7, 2000.

The undersigned Mortgagee and Mortgagor further warrant that said Mortgage is genuine and in all respects what it purports to be as amended; all statements therein contained are true; and the parties hereto hereby waive notice of acceptance hereof.

Dated March 7, 1997.

Celina Corporation

By: _Enriqueta H. Barrera_

FIRST VALLEY BANK

By: _____

EXHIBIT F
Page 1 of 3

THE STATE OF TEXAS          §
                                       §
COUNTY OF CAMERON      §

BEFORE ME, the undersigned authority, on this day personally appeared  _Enriqueta H. Buts_ ___, President of Celina Corporation known to me to be the officer whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed same in the capacity stated herein for the purposes and consideration therein expressed.

GIVEN UNDER MAY HAND AND SEAL OF OFFICE this _19TH_ day of _ _March_, 1997.

SAMUEL REYES, JR.
Notary Public
STATE OF TEXAS
My Comm. Exp. 04/08/2000

_____
NOTARY PUBLIC, STATE OF TEXAS


THE STATE OF TEXAS          §
                                       §
COUNTY OF CAMERON      §

BEFORE ME, the undersigned authority, on this day personally appeared _Arnie Gonzalez_ ___, _Exec. Vice-Pres._ of First Valley Bank, known to me to be the officer whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed same in the capacity stated herein for the purposes and consideration therein expressed.

GIVEN UNDER MAY HAND AND SEAL OF OFFICE this _20TH_ day of _ _March_, 1997.

SAMUEL REYES, JR.
Notary Public
STATE OF TEXAS
My Comm. Exp. 04/08/2000

_____
NOTARY PUBLIC, STATE OF TEXAS

EXHIBIT F
Page 2 of 3

AMENDMENT TO FIRST PREFERRED MORTGAGE          JUN 0 7 2000

On May 25, 1988, Celina Corporation (100% Mortgagor and sole owner) of P.O. Box 711, Port Isabel, Texas 78578, executed a First Preferred Mortgage on the Lucilla Ann, Official Number **537958**, in favor of Merchants Marine Bank (100% Mortgagee), as recorded in the Coast Guard Records under Book PM-172, Instrument No. I-199 on July 12, 1988; and :

The Mortgage was assigned to FIRSTBANK by the FDIC as Liquidator for Merchants Marine Bank;

Mortgagee (transferee) was thereafter known as First Valley Bank, then Norwest Bank Texas, N.A. and is now known as Wells Fargo Bank Texas, N.A., and Mortgagee's address is 1800 W. Highway 100, Port Isabel, Texas 78578;

The maturity date of the note has been extended to May 10, 2003.

The undersigned Mortgagee and Mortgagor further warrant that said Mortgage is genuine and in all respects what it purports to be as amended; all statements therein contained are true; and the parties hereto hereby waive notice of acceptance hereof.

Dated May 10, 2000.

Celina Corporation

By: _Enriqueta Barrera_
Enriqueta Barrera, President

WELLS FARGO BANK TEXAS, N.A.

By: _____
Sammy Reyes

THE STATE OF TEXAS
COUNTY OF CAMERON

BEFORE ME, the undersigned authority, on this day personally appeared Enriqueta Barrera, President of Celina Corporation known to me to be the officer whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed same in the capacity stated herein for the purposes and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this ___31st___ day of May, 2000.

_____
NOTARY PUBLIC, STATE OF TEXAS

MARIA M. ROSALES
Notary Public
STATE OF TEXAS
My Comm. Exp. Aug. 9, 2003

THE STATE OF TEXAS
COUNTY OF CAMERON

BEFORE ME, the undersigned authority, on this day personally appeared Sammy Reyes, Business Banker of Wells Fargo Bank Texas, N.A., known to me to be the officer whose name is subscribed to the foregoing instrument, and acknowledged to me that he executed same in the capacity stated herein for the purposes and consideration therein expressed.

GIVEN UNDER MAY HAND AND SEAL OF OFFICE this ___31st___ day of May, 2000.



MARIA M. ROSALES
Notary Public
STATE OF TEXAS
My Comm. Exp. Aug. 9, 2003

_____
NOTARY PUBLIC, STATE OF TEXAS

# Cash Flow Credit Line Agreement

THIS CASH FLOW CREDIT LINE AGREEMENT (the "Agreement") Loan Account No ___808-1994174-0001_____ is entered into
__June 15, 2001_____, by and between
__Celina Corporation_____
_____
(whether one or more, the "Borrower") and ___**Wells Fargo Bank Texas, National Association**_____
(the "Bank"). This Agreement covers the Borrower's Cash Flow Credit Line with the Bank. The Borrower agrees that all loan proceeds under this Cash Flow Credit Line will be used exclusively for ☒ business purposes ☐ agricultural purposes  No loan proceeds will be used for the purchase or refinancing, in whole or in part, of a one-to-four family residential property

**1. Cash Flow Credit Line Loans.** Subject to the terms and conditions in this Agreement, the Bank will give the Borrower an automatic loan from this Cash Flow Credit Line whenever
☒ The Borrower overdraws Borrower's checking account #
__3640108219___ or that checking account becomes overdrawn for any other reason acceptable to the Bank  Each automatic loan will be $ _1,000.00_  or as many times that amount as is needed to cover the overdraft, and it will be deposited in the Borrower's checking account
☐ The Borrower reduces the balance in Borrower's checking account # _____ below $ _____
(the "Minimum Balance") or the balance in that checking account falls below the Minimum Balance for any other reason acceptable to the Bank  Each automatic loan will be $ _____ or as many times that amount as is needed to maintain the Minimum Balance, and it will be deposited in the Borrower's checking account
☐ The Borrower draws a special draft on their Cash Flow Credit Line account by use of the forms provided by the Bank  The minimum amount of each draft must be at least $ _____
The Borrower also may request a loan from this Cash Flow Credit Line in person or by phone, provided the loan is at least $ _1,000.00_  Any such loan will be deposited in the Borrower's checking account (described above), unless the Bank and Borrower agree otherwise
(If the amount available to borrow from this Cash Flow Credit Line is less than the regular automatic loan amount, minimum special draft or loan amount shown above, then the Bank may, at its option, make an automatic loan, honor any special draft or make a loan for less than the automatic or minimum amount )
**2. Credit Limit/Promise to Pay.** The Borrower's Cash Flow Credit Line limit is $ _25,000.00_  The Bank is not obligated to make any loan to the Borrower that would cause the unpaid loan balance under this Cash Flow Credit Line to exceed that limit  If the Bank elects to make such a loan, the Bank may treat the loan as a Cash Flow Credit Line loan, subject to an Overline Fee, and require repayment of the unpaid loan balance in excess of the credit limit (the "Overline Amount") with the regular monthly payment  The Borrower promises to pay the Bank, when due, the unpaid loan balance, together with interest, fees, and charges due on this Cash Flow Credit Line
**3. Termination.** This Cash Flow Credit Line automatically will terminate
☒ on __**February 15, 2003**__ (the "Termination Date" and the "Maturity Date")  The Bank will make the loans (described in the Section entitled "Cash Flow Credit Line Loans") under this Cash Flow Credit Line until the Termination Date or until any early termination for default or any restriction on future loans as provided in this Agreement  The Termination Date also will be the Maturity Date when the final "balloon" payment is due  (See the Section entitled "Final Payment", page 2)
☐ on the date the Bank sends written notice to the Borrower terminating the Cash Flow Credit Line (the "Termination Date")  The Bank may terminate this line at any time  The Bank will make Cash Flow Credit Line loans until the Termination Date or until any early termination for default or  any restriction on future loans as provided in this  Agreement
The Borrower may terminate this Cash Flow Credit Line at any time by notifying the Bank  (Either Borrower may terminate this Cash Flow Credit Line if it is a joint account )  The Bank may immediately terminate this Cash Flow Credit Line if the Borrower closes any checking account of the Borrower described herein  Upon termination, the Borrower must repay the unpaid loan balance, along with interest, fees and charges.
**4. Interest.** Interest on each Cash Flow Credit Line Loan will begin to accrue on the day it is made.  Interest will be charged on the unpaid loan balance, based on the actual number of days elapsed in a year of _360_ days, for
☐ a fixed annual rate of _____ %
☒ an initial annual rate equal to _11.00_ %, which will be adjusted on a ☐ Monthly Basis (as described below)
☒ Floating Basis (as described below)
☐ to equal the Index Rate.
☒ to equal  _4.00_ % _above_  the Index Rate

**Monthly Basis:** Each adjustment will take effect on the first day of every month, using the Index Rate in effect on the last day of the prior month

**Floating Basis:** Each adjustment will occur as and when the Index Rate changes
"Index Rate" means
☒ the "Base Rate" which is the rate of interest established by **Wells Fargo Bank Texas, N.A.**
from time to time as its "base" or "prime" rate
☐ the "Wall Street Rate" which is the highest "prime" rate of interest published in the Wall Street Journal "Money Rates" Table
☐ the _____

In the case of a variable interest rate based on the Index Rate, the actual interest rate charged will never exceed the maximum rate permitted by law
**5. Amount of Fees/Charges.** The Borrower agrees to pay the following fees and charges, which are described in greater detail under the Section entitled "Provisions Relating to Fees/Charges"

| | |
|---|---|
| Facility Origination Fee | $ N/A |
| Annual Fee | $ N/A |
| Overline Fee | $ N/A |
| Return Draft Fee | $ 25.00 |
| Stop Payment Fee | $ 25.00 |
| Return Payment Fee | $ N/A |
| _____ Fee | $ N/A |
| _____ Fee | $ N/A |

Late Fee (equal to the following amount) if any regular minimum payment is not paid in full within _N/A_ days of its scheduled due date
☐ $ _____
☐ _____ % of the unpaid amount of the scheduled regular minimum monthly payment.
☐ the _____ of $ _____ or _____ % of the unpaid amount of the scheduled regular minimum monthly payment
☒ No late fee will be charged

**6. Monthly Payments** The Borrower agrees to make monthly payments as follows
_Billing or Automatic Debit_  To repay the Cash Flow Credit Line loans, the Bank will each month.
☐ provide the Borrower with a bill stating the total payment due  The total payment due includes the Borrower's regular minimum monthly payment (described below), together with any past due regular minimum monthly payment(s) and all fees and charges then due on this Cash Flow Credit Line
☒ automatically charge the Borrower's checking account number _3640108219_  for the regular minimum monthly payment(s) (described below) then due plus any Annual Fee then due.  If this account does not have enough money in it to make this automatic payment, the Bank may, but is not required to, make the Borrower a loan from this Cash Flow Credit Line to make the payment.  (Any other fees and charges due must be paid separately  The Bank may, at its option, charge this same account for these other fees and charges if they are not paid when due )

_Payment Due Date_  The Borrower's regular minimum monthly payment will be calculated on the day the Borrower's monthly statement is prepared and will be due on
☒ the due date shown in that statement (which will be approximately _15_ days after the date of the statement)
☐ _____ and on the same calendar day of each month thereafter (unless such calendar day does not fall in a particular month, in which case it will be due on the last calendar day of such month )  **Non-combined statements only.**
☐ _____ and on the last day of each month thereafter  **Non-combined statements only**

**EXHIBIT G**
**Page 1 of 4**

*Payment Amount.* Each regular minimum monthly payment will be the following amount (plus any Overline Amount)

☐ a fixed amount of $_____.
☐ an amount equal to the greater of $_____ or _____% of the unpaid loan balance.
☒ an amount equal to the accrued interest (and credit insurance premium, if any) owing.
☐ an amount equal to the accrued interest (and credit insurance premium, if any) owing; plus the following additional amount
    ☐ a fixed amount of $_____.
    ☐ an amount equal to the greater of $_____ or _____% of the unpaid loan balance.
☐ an amount equal to the accrued interest (and credit insurance premium, if any) owing, in addition, a Periodic Payment will be due in certain months (as described below).

*Periodic Payment.* A Periodic Payment will be calculated on the day the Borrower's statement is prepared each _____ and will be due on:

☐ the due date shown in each such statement (which will be approximately _____ days after the date of that statement). The Borrower's first monthly statement showing a Periodic Payment will be prepared approximately _____ months after

the date of this Agreement. Non-combined statements only.

☐ _____ and continuing on the same calendar day of each _____ thereafter (unless such calendar day does not fall in the month ending such period, in which case it will be due on the last calendar day of such

month.) Non-combined statements only.
The Periodic Payment will be in the following amount.

☐ a fixed amount of $_____.
☐ an amount equal to the greater of $_____ or _____% of the unpaid loan balance

*Prepayment.* The Borrower may prepay any amounts outstanding under this Cash Flow Credit Line at any time, in whole or in part, without premium or penalty. Any prepayment shall be applied as described in the Section entitled "Application of Payments."

**7. Final Payment.** If this Cash Flow Credit Line has a Maturity Date (see the Section entitled "Termination", page 1), the Borrower must pay the unpaid loan balance, together with any interest, fees and other charges, in a single "balloon" payment on the Maturity Date. Whether or not this Cash Flow Credit Line has a Maturity Date, in the event of default, the unpaid loan balance, together with any interest, fees and other charges, may be accelerated (see the Section entitled "Remedies"), and the Bank may automatically charge any of the Borrower's checking or other accounts with the Bank for such amounts.

**8. Security.** This Cash Flow Credit Line is secured by any security agreement, collateral pledge, assignment, or other separate security instrument which the Borrower has executed, is executing, or may in the future execute in favor of the Bank

☐ If this box is checked, this Cash Flow Credit Line also is secured by the Borrower's mortgage or deed of trust in favor of the Bank dated _____.

**9. Provisions Relating to Fees/Charges.** The fees and charges shown under the Section entitled "Amount of Fees/Charges" and described below apply to this Cash Flow Credit Line. Except for the Facility Origination Fee (which is due and payable when this Agreement is signed), these fees and charges will be due and payable after the close of the billing cycle during which such fees and charges are assessed, on the same due date as the Borrower's regular minimum monthly payment for that billing cycle (as specified in the monthly statement)

*Facility Origination Fee:* The Borrower agrees to pay to the Bank the Facility Origination Fee shown on the first page of this Agreement for the origination and initial processing of this Cash Flow Credit Line.

*Annual Fee:* The Borrower agrees to pay to the Bank the annual fee shown on the first page of this Agreement each time the fee is assessed in the first billing cycle and in each billing cycle thereafter that falls on the anniversary date of this Cash Flow Credit Line. The fee is payable at the same time that the Borrower's regular minimum monthly payment is due for such billing cycle.

*Overline Fee:* The Borrower agrees to pay the Bank the Overline Fee shown on the first page of this Agreement each time the Borrower, at its sole discretion, makes any loan which (when added to the Borrower's unpaid loan balance) exceeds the Borrower's credit limit. (If state law limits this fee to one fee per billing period, only one Overline Fee will be charged during such billing period.)

*Return Draft Fee:* The Borrower agrees to pay to the Bank the return

draft fee shown on the first page of this Agreement for any special draft drawn on the Cash Flow Credit Line that the Bank returns unpaid because the Borrower is in default, this Cash Flow Credit Line is restricted, or payment of the draft would cause the unpaid loan balance to exceed the Borrower's credit limit.

*Stop Payment Fee:* The Borrower agrees to pay to the Bank the stop payment fee shown on the first page of this Agreement if the Borrower notifies the Bank to stop payment on any draft drawn directly on this Cash Flow Credit Line

*Return Payment Fee.* The Borrower agrees to pay to the Bank the return payment fee shown on the first page of this Agreement for any check, instrument, or ACH transfer made as payment on this Cash Flow Credit Line which is returned unpaid for any reason

*Late Fee.* The Borrower agrees to pay to the Bank the late fee shown on the first page of this Agreement if any regular minimum monthly payment is not paid in full within the specified number of days of its scheduled due date.

The assessment of any fee or charge does not abrogate any of the Bank's rights to terminate or restrict this Cash Flow Line of Credit in accordance with the provisions of this Agreement

*Additional Fees.* The Borrower agrees to pay to the Bank any additional fees shown on the first page of this Agreement.

**10. Stop Payment Terms for Drafts.** To be effective, a stop payment order (an "order") must contain the Borrower's name and account number, the number and exact amount of the draft, and the name of the party to whom the draft is payable. It also must be received in a time and manner that gives the Bank a reasonable opportunity to act on it. An order will be in effect for six months; however, the Bank reserves the right to remove an oral order after 14 days if the Borrower fails to confirm the order in writing within that time. The Borrower may renew an order in writing every six months. The Bank may pay the Borrower's draft after an order has expired even though the draft is more than six months old. The bank will have no liability to the Borrower if any of the information that the Borrower provides in the order is incorrect and the Bank pays the draft.

**11. Application of Payments.** If the borrower has elected a regular minimum monthly payment equal to the accrued interest (and credit insurance premiums, if any) owing, the Bank will apply payments that the Borrower makes to billed but unpaid amounts in the following order: (i) interest and any credit insurance premiums, (ii) annual fees, (iii) remaining types of fees and charges, and (iv) the unpaid loan balance (principal).

If the Borrower has elected any other regular minimum monthly payment method, the Bank will apply payments that the Borrower makes to billed but unpaid amounts in the following order: (i) interest and any credit insurance premiums, (ii) unpaid loan balance (principal), (iii) annual fees, and (iv) remaining types of fees and charges.

Any amounts paid in excess of billed but unpaid amounts will be applied to the unpaid loan balance (principal), but will not excuse the Borrower from making successive regular minimum monthly payments.

**12. Representation of Corporation, Partnership, Limited Liability Company, or Organization.** In the event that the Borrower is a corporation, partnership (of any kind) limited liability company, or organization, the Borrower represents that the person(s) signing below has (have) the representative capacity and authority to execute this Agreement on behalf of such corporation, partnership, limited liability company, or organization.

**13. Financial Statements.** The Borrower and any guarantor(s) will promptly complete current financial statements (in form satisfactory to the Bank) and deliver such statements and any recent federal income tax returns to the Bank whenever the Bank requests such financial statements and/or tax returns, whether annually or otherwise from time to time. The Bank will use these statements, tax returns, and other information to review the Borrower's and guarantor(s)' financial condition.

**14. Restrictions on Future Loans.** In addition to the Bank's right to terminate this Cash Flow Credit Line, the Bank also can refuse to make further loans (without terminating this Cash Flow Credit Line) if (i) the Borrower is in default, (ii) the Borrower does not furnish the Bank with current financial statements and/or tax returns when requested by the Bank (see the Section entitled "Financial Statements"), or (iii) the Bank determines, based on the Borrower's current financial statements, a recent credit report or other information, that there has been a material change in the Borrower's financial circumstances which may (now or in the future) impair the Borrower's ability to repay any additional loans. If, for example, the Borrower incurs substantial new debts after the date of this Agreement, the Bank can refuse to make further loans.

**15. Default.** The Borrower will be in default under this Agreement if any one or more of the following occur:
a. The Borrower does not make any payment when due;
b. The Borrower fails to comply with any other term or condition in this Agreement or in any other agreement or instrument with the Bank;
c. Someone else begins legal action to take any money from any of the Borrower's accounts with the Bank;

d   The Borrower is bankrupt or insolvent;

e   The Borrower dies (in the case of an individual) or dissolves or l Liquidates (in the case of a partnership, corporation or other entity);

f.   Any guarantor of this Cash Flow Credit Line is bankrupt or insolvent;

g   Any guarantor of this Cash Flow Credit Line dies (in the case of an individual) or dissolves or liquidates (in the case of a partnership, corporation or other entity);

h   The Borrower changes its legal entity status (without the Bank's written consent);

i   The Bank, in good faith, determines that there has been a material change in the Borrower's financial circumstances which may (now or in the future) impair the Borrower's ability to repay any outstanding Cash Flow Credit Line loans; or

j   The Bank terminates any checking account of the Borrower described herein because the Bank has a reasonable basis to believe that the account has been inactive, misused or mismanaged.

**16.  Remedies.**  If the Borrower dies (in the case of an individual) or is bankrupt or insolvent (in any case), this Cash Flow Credit Line will automatically terminate and the entire unpaid loan balance, together with interest, fees and charges, outstanding under it will automatically become due and payable without notice or demand.  In the case of any other default, the Bank may, at any time, terminate this Cash Flow Credit Line and demand that the Borrower immediately pay the entire unpaid loan balance, together with interest, fees and charges, outstanding under it.  In the case of any default, the Bank may refuse to make further loans and/or enforce any rights and remedies it has against the Borrower or any collateral or guarantor, and the Borrower agrees to pay reasonable attorneys' fees and other costs of collection, unless prohibited by law.

**17.  The Bank's Right of Set off.**  The Bank has the right of setoff. This means that the Bank has the right to take any money that the Borrower has on deposit with the Bank to pay any amounts that the Borrower owes under this Agreement.

**18.  Cumulative Rights and Remedies.**  Mere delay or failure to act will not preclude the exercise or enforcement of any of the rights and remedies of the Bank.  All rights and remedies of the Bank are cumulative and may be exercised singularly or concurrently, at the Bank's option.  The exercise or enforcement of any one such right or remedy will neither be a condition to nor bar to the exercise or enforcement of any other.  (If this Cash Flow Credit Line is a joint account, each Borrower who signs this Agreement is jointly and severally liable for the unpaid loan balance, together with interest, fees and charges, outstanding under this Cash Flow Credit Line )

**19.  Liability for Loan Advances Made by Other Checking Account Owner/Signers.**  The Borrower understands and agrees that the Borrower is fully responsible and liable for any and all loans, finance charges and other charges outstanding on this Cash Flow Credit Line now or at any time in the future, whether the checks, transfers, withdrawals and/or charges that created or increased the balance on this Cash Flow Credit Line were initiated or authorized by the Borrower or any co-owner of or authorized signer for the checking account(s) for which this Cash Flow Credit Line provides overdraft protection

**20.  Miscellaneous.**  This Agreement may be amended only by a written agreement signed by the Borrower and the Bank, except for minor adjustments in the amount of the Overline Fee, Return Draft Fee, Stop Payment Fee, and Return Payment Fee which the Bank may make from time to time.  If any provision of this Agreement is held invalid under applicable law, such invalidity will not affect any other provision of this Agreement that can be given effect without such invalid provision, and, to this end, the provisions of this Agreement are severable.  This Agreement is governed by the law of the state in which the Bank is located

**21.  Agreement to Arbitrate.**  The Bank and Borrower agree to submit to binding arbitration all claims, disputes and controversies (whether in tort, contract, or otherwise, except "core proceedings" under the U.S. Bankruptcy Code) arising between themselves and their respective employees, officers, directors, attorneys and other agents, which relate in any way (without limitation) to existing and future loans and extensions of credit or requests for additional credit, including by way of example but not by way of limitation the negotiation, collateralization, administration, repayment, modification, default, termination and enforcement of such loans or extensions of credit.

Arbitration under this Agreement will be governed by the Federal Arbitration Act (except in Colorado where it will be governed by Colorado law), except in the state and city in which the Bank's principal office is located or some other mutually agreeable location and be conducted by the American Arbitration Association ("AAA") in accordance with the AAA's arbitration rules ("AAA Rules") and the following provisions:

Selection of Arbitrator.  Arbitration will be conducted before a single neutral arbitrator selected in accordance with AAA Rules and who will be an attorney who has practiced commercial law for at least 10 years.

Statutes of Limitation and Procedural Issues   The arbitrator will determine whether an issue is arbitratable and will give effect to applicable statutes of limitation.  Judgment upon the arbitrator's such action for judicial relief.  The arbitrator has the discretion to award may be entered in any court having jurisdiction.  The institution and maintenance of an action for judicial relief or pursuit of a provisional or ancillary remedy shall not constitute a waiver of the right of any party, including the plaintiff, to submit the controversy or claim to arbitration if any other party contests decide, upon documents only or with a hearing, any motion to dismiss for failure to state a claim or any motion for summary judgment.

Discovery.  Discovery will be governed by State Rules of Civil Procedure for the state in which the Bank's principal office is located Discovery must be completed at least 20 days before the hearing date and within 180 days of the commencement of arbitration.

Each request for an extension and all other discovery disputes will be determined by the arbitrator upon a showing that the request is essential for the party's presentation and that no alternative means for obtaining information are available during the initial discovery period.

Exceptions to Arbitration.  This Agreement does not limit the right of either party to (i) foreclose against real or personal property collateral, (ii) exercise self-help remedies such as replevin, injunctive relief, attachment or the appointment of a receiver during the pendency or before or after any arbitration proceeding; or (iv) obtain a cognitive judgment, if available.  These exceptions do not constitute a waiver of the right or obligation of either party to submit any dispute to arbitration, including those arising from the exercise of these remedies.

Arbitration Costs and Fees.  The arbitrator will award costs and expenses in accordance with the provisions of the documents evidencing each loan or extension of credit.

**22.  Optional Credit Insurance.**  If the Borrower is an individual, he and/or she may purchase credit life insurance from the Bank.  The purchase of credit life insurance is optional and not required as a condition of obtaining this Cash Flow Credit Line.

Any credit life insurance is governed by the terms, conditions and limitations of coverage described in the certificate of insurance.  The daily rate for single and joint credit life insurance and the corresponding cost per $100 of the Borrower's average daily unpaid loan balance each monthly period are shown below:

|  | Single Life Ins | Joint Life Ins |
|---|---|---|
| Daily Rate | _____ % | _____ % |
| Cost per $100 | $ _____ | $ _____ |

The Borrower elects to purchase the following credit insurance:
☐ Single Credit Life Insurance
☐ Joint Credit Life Insurance
☒ No Insurance

**If the Bank is located in Nebraska:**  A credit agreement must be in writing to be enforceable under law  To protect you and us from any misunderstandings or disappointments, any contract, promise, undertaking or offer to forebear repayment of money or to make any other financial accommodation in connection with this loan of money or grant an extension of credit, or any amendment of, cancellation of, waiver of, or substitution for any or all of the terms or provisions of any instrument or document executed in connection with this loan of money or grant or extension of credit, must be in writing to be effective.

**If the Bank is located in Iowa:**  IMPORTANT:  READ BEFORE SIGNING.  THE TERMS OF THIS NOTE AND AGREEMENT SHOULD BE READ CAREFULLY BECAUSE ONLY THOSE TERMS IN WRITING ARE ENFORCEABLE.  NO OTHER TERMS OR ORAL PROMISES NOT CONTAINED IN THIS WRITTEN CONTRACT MAY BE LEGALLY ENFORCED.  YOU MAY CHANGE THE TERMS OF THIS NOTE AND AGREEMENT ONLY BY ANOTHER WRITTEN AGREEMENT.  THIS NOTICE ALSO APPLIES TO ANY OTHER CREDIT AGREEMENTS (EXCEPT CONSUMER LOANS OR OTHER EXEMPT TRANSACTIONS) NOW IN EFFECT BETWEEN THE BORROWER AND THE BANK.  BY SIGNING THIS AGREEMENT, THE BORROWER ACKNOWLEDGES RECEIPT OF A COPY OF THIS AGREEMENT.

**If the Bank is located in Texas:**  THIS WRITTEN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.  THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.  CHAPTER 346 OF THE TEXAS FINANCE CODE OR ANY SUCCESSOR STATUTE WHICH REGULATES CERTAIN REVOLVING LOAN ACCOUNTS SHALL NOT APPLY TO THIS AGREEMENT.  IN NO EVENT SHALL THE RATE OF INTEREST CONTRACTED, CHARGED OR COLLECTED FOR ON THIS AGREEMENT EXCEED THE MAXIMUM RATE PERMITTED BY FEDERAL LAW OR THE LAW OF THE STATE OF TEXAS (AS APPLICABLE).  THE BORROWER AND THE BANK DO NOT AGREE OR INTEND THAT THE BORROWER CONTRACT FOR OR BE CHARGED (OR THE BANK COLLECT OR RECEIVE) ANY AMOUNT WHATSOEVER, WHETHER IN THE FORM OF INTEREST OR A FEE, WHICH MAY CAUSE THE BANK TO COLLECT OR RECEIVE MORE THAN THE MAXIMUM AMOUNT PERMITTED BY APPLICABLE LAW.

**EXHIBIT G**
Page 3 of 4

NOTWITHSTANDING ANYTHING TO THE CONTRARY CONTAINED HEREIN, ANY EXCESS INTEREST OR UNAUTHORIZED FEE SHALL BE FIRST APPLIED TO REDUCE THE PRINCIPAL BALANCE OF THIS AGREEMENT, AND UPON PAYMENT IN FULL OF THE PRINCIPAL, OF THIS AGREEMENT, BE REFUNDED TO THE BORROWER.  NOTICE TO TEXAS RESIDENTS:  IF THIS LOAN IS A HOME EQUITY LOAN SECURED BY A HOMESTEAD IN TEXAS, THE OCCURRENCE OF THE FOLLOWING WILL NOT RESULT IN ACCELERATION AND DEMAND FOR PAYMENT OR FORECLOSURE:  DECREASE IN THE MARKET VALUE OF THE HOMESTEAD AND DEFAULT UNDER THE TERMS OF OTHER INDEBTEDNESS NOT SECURED BY THE HOMESTEAD.

If the Bank is located in Minnesota:  This extension of credit is made under:  (i) Minn. Stat. 47.204 if this Agreement is from an individual and is secured by a first lien on residential real estate; (ii) Minn. Stat. 334.01, subd. 2, if the initial advance under this Agreement is $100,000.00 or more and it is not secured by a first lien on residential real estate.

If the Bank is located in North Dakota:  In all events the interest rate shall be the same rate after the Maturity Date as was in effect on the Maturity Date.  If this Agreement is secured by a mortgage on real property located in North Dakota except a first mortgage:  THIS OBLIGATION MAY BE THE BASIS FOR A PERSONAL ACTION AGAINST THE PROMISOR OR PROMISORS IN ADDITION TO THE OTHER REMEDIES ALLOWED BY LAW.  (The term "Promisor" or "Promisors" means the Borrower herein).  If the Agreement is secured by a mortgage on commercial real property located in North Dakota, the Bank has the right, following an event of default, to proceed to obtain and collect a deficiency judgment, together with foreclosure of the real property mortgaged under applicable laws

If the Bank is located in New Mexico:  The undersigned hereby acknowledges that I am aware of the provisions of Section 58-6-5 NMSA 1978 Comp., which require a contract, promise or commitment to loan money or to grant, extend or renew credit or any modification thereof, in an amount greater than $25,000.00, not primarily for personal, family or household purposes, to be in writing and signed by the party to be charged or that party's authorized representative.

This Agreement is executed as of the day and year first above written. By signing below, the Borrower acknowledges receiving a copy of this Agreement

**Signatures**

Borrower's Name
Celina Corporation

| Signature | Signature |
|---|---|
| X  *Enriqueta H. Barrera* | X |
| Name and Title (if applicable)  Enriqueta H. Barrera | Name and Title (if applicable) |

| Signature | Signature |
|---|---|
| X | X |
| Name and Title (if applicable) | Name and Title (if applicable) |

Bank's Name
Wells Fargo Bank Texas, N.A.

| Signature | Title |
|---|---|
| X | Business Banker |